## BOLTON *vs.* CUMMINGS AND OTHERS.

A conveyance of real estate, the proper subject of record, may be proved in a suit to which the grantee is a stranger, by a copy of the record of the deed certified by the recording officer; and it is not necessary that the non-production of the original deed should be first accounted for. And such copy is equivalent to proof of the execution and contents of the deed by common law evidence.

In a suit by a sheriff, on a bond that an imprisoned debtor should remain within the liberties of the prison, the defendants, on the trial, offered in evidence in mitigation of damages, a discharge from all demands given to the debtor by the judgment creditor, after the commencement of the suit, they having pleaded the general issue, with no notice that they should offer such evidence. Held, that as such discharge, by reducing the damages to a merely nominal sum, would have substantially the same effect as if used as a bar to the action, it ought not to be admitted in evidence without notice.

Where, on such trial, it appeared that the debtor, after a departure from the prison limits, had returned within the same, and remained therein for about two months, at the end of which time he was informed by the plaintiff that he should not longer stand charged with his custody; and the plaintiff offered evidence to prove, that he had not consented to receive him back, and had given him the notice stated immediately on being informed of the fact of his previous departure, but did not introduce the testimony of the jailer, who was within the jurisdiction of the court; and the defendants claimed that the facts raised a presumption that the plaintiff had consented to receive the

Bolton *v.* Cummings and others.

debtor back, and that the plaintiff's omission to introduce the testimony of the jailer on the subject, and especially with reference to the jailer's own conduct in the matter, left the presumption unremoved, and requested the court so to charge the jury; and the court instructed them that the facts did raise such presumption, but that it might be rebutted by any proper evidence, and submitted to them the question of fact, on all the evidence, whether the plaintiff had consented to receive the debtor back,—it was held, that such course was correct, and that the plaintiff was not bound to introduce the testimony of the jailer, who might have been called on by the defendants if they had desired.

Where, on such trial, it appeared that the debtor, while at large within the prison limits, had been employed by the jailer to render sundry services in connection with the care of the jail, being sometimes entrusted with the keys, and sometimes taking charge of the prisoners when conducted to or from the jail, but which services were rendered under the supervision of the jailer, and all within the prison liberties,—it was held, that such employment of the debtor by the jailer did not constitute a voluntary escape.

Where a limit of the jail liberties, as established by the county commissioners, was the west line of a certain highway, and after the limit was so established, a house was erected on the west side of the highway, and the fence carried around the rear of the house, leaving the space around it open to the highway,—it was held, that such open space and the house therein were not thereby brought within the prison liberties.

Also, that any change of the west line of the highway, would not alter the line of the prison liberties, where the commissioners, in establishing the liberties, had made no provision for subsequent alterations of the line of the highway.

THIS was an action of debt, on a bond given to the plaintiff as sheriff of the county of Tolland, by the defendants, in the sum of twelve hundred dollars, the condition of which was that John P. Cummings, one of the defendants, then imprisoned in the county jail of said county, on an execution in favor of one Earl Cummings, should remain a faithful prisoner within the limits of the liberties of said jail until lawfully discharged.

The declaration, after setting out the bond and condition, alleged that the plaintiff, on the receipt of the bond, permitted the said John P. Cummings to go at large within the liberties of said jail, and that the said Cummings, without the consent or knowledge of the plaintiff, and without being lawfully discharged, at sundry times mentioned in the declaration, departed from and went without and beyond the limits of said liberties.

The defendants pleaded the general issue, with notice that

they should offer evidence to prove that said John P. Cummings had in good faith endeavored to fulfill and perform the condition of the bond, and had used due diligence to ascertain the limits of said liberties, but had been unable to do so ; and had often requested the plaintiff, as sheriff of said county, and as keeper of said jail, to make them known to him, but that he had always neglected and refused to do so ; and that if the said John P. Cummings had gone beyond the limits of said liberties, he had done so unintentionally, and in consequence of his ignorance of the limits : also that the plaintiff had voluntarily allowed the said Cummings to escape from said jail and depart from said liberties : also that the said Cummings, after said alleged departure from said liberties, had voluntarily returned to said jail, and to the custody of the plaintiff, and that the plaintiff, knowing all the facts, had received him back, and held him in custody for a long time thereafter.

The case was tried at the term of the superior court holden in the county of Tolland, in April, 1856.

On the trial, the plaintiff offered in evidence the original record of the limits of the liberties of the prison in said county, as established by the county court in the year 1820, and extended in the years 1825 and 1830; and claimed that while the said John P. Cummings was legally confined within said limits, in the manner alleged in the declaration, and was at large within the same under said bond, he had on three several occasions departed therefrom, over that portion of the southern and western line thereof that was described in said record as follows, viz.: " Then following the road leading from said mills, to the court-house by the burying-ground and Daniel Griggs's, to the south line of a lot of land lately purchased by Jeduthan Paulk of Daniel Benton, then westerly in the south line of said lot to the southwest corner, thence northerly," &c.

For the purpose of showing what land was referred to as " lately purchased by Jeduthan Paulk of Daniel Benton," the plaintiff offered in evidence a copy of a deed from Daniel Benton to said Paulk, dated January 22d, 1825, certified by

the town-clerk of the town of Tolland to be a true copy from the records of deeds of land in said town, accompanied with evidence that the land described in said deed was the only land ever sold by said Benton to said Paulk, and other evidence tending to identify the same. The defendants objected to the admission of this copy in evidence, and insisted that the plaintiff was bound to produce the original deed, or account for its non-production. But the court over-ruled the objection, and admitted the copy to be read for the purpose for which it was offered.

The defendants offered to prove, by sundry witnesses, that while the said John P. Cummings was so confined within said limits, and both before and after the alleged departures therefrom, he made inquiries of the clerk of the court in said Tolland county, and of sundry other persons, for the record of said jail limits, and that he was informed by said clerk and the others, in every instance, that there were no such records. To the admission of this evidence the plaintiff objected, and the court refused to admit it, except so far as it might relate to inquiries made of the plaintiff, as sheriff of the county, or of the jailer for the time being.

The defendants offered in evidence a receipt, signed by Earl Cummings, the creditor on whose execution the said John P. Cummings was imprisoned, purporting to be in full of all demands in his favor against John P. Cummings, and dated subsequently to the commencement of the present suit, and claimed that said receipt should be received, to reduce the damages that might be found for the plaintiff in this suit. To the admission of this receipt in evidence the plaintiff objected, because no notice was given in writing at the time of filing the plea, that the defendants would offer any such defense. The court sustained the objection, and the receipt was not read in evidence.

The plaintiff introduced evidence to prove that said John P. Cummings had, on three occasions, between the 1st day of October and the 9th day of November, 1855, departed from the liberties of the prison without the consent or knowledge of the plaintiff, and that, as soon as the plaintiff

had knowledge of said departures, he refused to stand charged with his custody, and gave him immediate notice thereof. The defendants offered evidence to prove that if said Cummings had departed from the limits of the liberties of said prison, as claimed by the plaintiff, yet he immediately thereafter returned to said limits, and before any action was brought against the plaintiff for said alleged escape, and remained within said limits until the 4th day of January, 1856, when he was discharged therefrom by the plaintiff; and thereupon requested the court to charge the jury that, if the fact was so, the plaintiff could not recover in this action. But the court did not so charge the jury, but instructed them that if Cummings had departed from the limits of the liberties of the prison, as claimed by the plaintiff, and had returned before any suit was commenced against the sheriff, yet such a departure was a breach of the bond of the defendants, and the sheriff might sustain this suit thereon if he had not consented to receive said Cummings as his prisoner after his said return, but had given him notice immediately upon his knowing of his departure, as he claimed to have done, that he would stand no longer charged with his custody.

The defendants claimed that the fact that Cummings had returned to, and remained within, said limits, for nearly two months after said pretended departure, raised a strong presumption that the sheriff had consented to receive him again as a prisoner, and that although the sheriff had testified that he had not consented so to receive him, and had no knowledge of said departure until the day he notified him that he should no longer stand charged with his custody, yet the jury should find the sheriff had so received said Cummings because the plaintiff had not introduced Joshua Griggs, the jailer, to testify that he as such jailer had not consented to receive him back into custody ; and the defendants requested the court so to charge the jury. But the court instructed them that the return of Cummings to the limits, and his continuance within the same, as claimed by the defendants,

was presumptive evidence that the sheriff had consented to receive him, and would justify them to find such consent, unless the effect of this presumption was rebutted by legal evidence. But that it was competent for the plaintiff to rebut this presumption by any legal evidence, and if the jury should be satisfied, from all the evidence in the case, that neither the sheriff nor the jailer knew of these departures until the day the sheriff notified Cummings he should no longer stand charged with his custody, and that such notice was given immediately upon his having knowledge of the facts, the plaintiff was entitled to recover in this suit, although he had not introduced the testimony of Mr. Griggs.

The defendants offered evidence to prove that after the date of said bond, and while said Cummings was at large upon the jail limits, he boarded for several months in the family of the jailer, Mr. Griggs, and was often during that time employed by him to labor about his house, barn and the jail, all of which were within the liberties of the prison, and while so employed was at times entrusted by said Griggs with the keys of the jail, to go in and out of the prison, to wait upon the prisoners, and to do such things as were necessary to be done in the prison; that he sometimes went into the prison with persons who were being committed to prison, and sometimes was sent for prisoners who were to be discharged from prison; and that these acts were done by him both in the presence and in the absence of said jailer; and the defendants thereupon requested the court to charge the jury that, if they should find the facts to be in this respect as claimed by them, they constituted a voluntary escape, and that the sheriff could not after such an escape sustain any action upon the bond in question.

The court instructed the jury that if the sheriff should appoint an imprisoned debtor to be the jailer, it would be a voluntary escape; also if the jailer should abandon the prison and leave it in the custody of a prisoner, such act would be a voluntary escape; and in either event no suit

could be sustained by the sheriff upon any bond he might take, conditioned that the prisoner therein named should remain a faithful prisoner; but that the permitting a prisoner to do those acts about the prison that are necessary for the comfort and support of the prisoners, under the direction and eye of the jailer, without any abandonment of the prison on his part, would not amount to a voluntary escape. That if, therefore, the jury should find that the sheriff had appointed Cummings jailer during the time named, or if they should find that Mr. Griggs, the jailer, had during the time named abandoned his office, or gone away and left the prison in charge of Cummings, in either case there would be a voluntary escape and this suit could not be sustained; but if the jury should find that all the acts done by Cummings in relation to the prison were done by him under the direction and supervision of the jailer, and were within the limits of said prison, then there would have been no voluntary escape and the suit might be sustained.

The defendants claimed that it was the duty of the sheriff, at the time he admitted said Cummings to the liberties of the prison, to inform him of the boundaries of said limits, which he admitted he had not done; but the defendants did not claim that said Cummings made any direct request of the sheriff, to describe to him the limits. They, however, offered evidence to prove that, soon after his admission to said limits, he inquired of the jailer as to said boundaries, and was informed by him generally where they were, but the jailer was not able to describe them with exactness. The defendants thereupon requested the court to charge the jury that the omission of the plaintiff to describe said limits to said Cummings, was such a dereliction of duty that he could not recover in the present suit. But the court did not so instruct the jury, but informed them that it was the duty of the sheriff to describe to an imprisoned debtor, admitted to the liberties of the prison, the true limits of said liberties, as near as he was able, on request, and that if said debtor should not depart from said liberties as so described by said sheriff,

Bolton *v.* Cummings and others.

although he might go out of the real limits of said prison, the sheriff could not sustain a suit upon his bond; but that the sheriff was not bound to describe said liberties, unless he was requested by the prisoner so to do; that if Cummings made no such request of the plaintiff, or if the description given him by the jailer did not mislead him, and was not the cause of his departure from said liberties, the sheriff might recover upon his bond, if he proved that the prisoner had actually departed from the liberties of the prison.

One of the departures from the liberties of the prison claimed by the plaintiff, consisted in said Cummings going into the dwelling-house of Daniel Benton, which the defendants claimed stood within said liberties. It was agreed that said house had been built within the last ten years, and was situated on the west side of the highway, at a point where the line of the prison limits is described in the record before referred to, as " following the road from said mills to the court house," the east side of said road being the one within said limits; and that the front of the house extended about one foot east of the fence in the west line of the highway, as the fence stood when the prison limits were established; that the fence north of the house had been removed from the line in which it formerly stood, a few feet to the east, and came near to the north-east corner of the house, then extended westwardly to a point in the rear of the house, thence southward in a line nearly parallel with the highway, leaving a space between the fence and the rear of the house, and thence eastwardly to where the fence stood when the. boundaries of the jail limits were established; that the house was not inclosed by any fence, and that the only entrance to it from the road was by a gangway at the south end leading to the rear thereof. And the defendants claimed that inasmuch as the house was no otherwise inclosed than as above stated, it stood within the highway, and was practically within the liberties of the prison, and requested the court so to charge the jury. But the court instructed them that the western boundary of said liberties at the point in question, was the line of the fence on the west side of the highway as

it stood when said liberties were established; and that the removal of the fence to the east or to the west of the place where it then stood, would not contract or enlarge said limits, and that if the jury should find that said Cummings went west of said line, it was a departure from said limits, although he might not have gone west of the fence as it then stood; and that it was a breach of the bond if he had actually departed from the prison liberties, even if he had done so inadvertently.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial, for errors in the rulings and charge of the court.

*H. K. W. Welch* and *Calhoun*, in support of the motion.

1. The copy of the deed from Benton to Paulk should not have been admitted without proof of the original being lost. 1 Greenl. Ev., sec. 558 and note. *Kelsey* v. *Hanmer*, 18 Conn., 311.

2. The evidence should have been admitted, of the debtor's search for the records of the jail limits, and the declarations of the clerk of the court respecting them.

3. There was no breach of the bond in this case, because no intent to commit a breach. *Baxter* v. *Taber*, 4 Mass., 369. *Commonwealth* v. *Alden*, 14 Mass., 389. *Dole* v. *Moulton*, 2 John. Cas., 205. " Statute creating jail liberties was passed for humane purposes." *Dash* v. *Vankleeck*, 7 John., 511. *Seymour* v. *Harvey*, 8 Conn., 69. The bond should therefore be construed so as to secure the end contemplated by the statute, and not so as to entrap the prisoner.

4. The discharge should have been admitted; being offered only in mitigation of damages, it was not necessary to·plead it. *Joy* v. *Hull*, 4 Vermont, 455. No notice need be given, unless the matter of defense relied upon must have been pleaded specially at common law. But this could not be the subject of a special plea, because it does not profess to be an answer to the whole of any one

count in the declaration. Com. Dig. Plead., E. 4. Steph. on Plead., 215. *Herries* v. *Jamieson*, 5 Term R., 557. *Atkinson* v. *Stephens*, 14 Eng. L. & Eq. R., 407. *Guardians of the Poor, &c.* v. *British Guarantee Association*, 14 Eng. L. & Eq. R., 504. The receipt was admissible even in bar of the action under the general issue. 1 Chit. Pl., 482. *Minton* v. *Woodworth*, 11 John., 474. *Brown* v. *Littlefield*, 7 Wend., 454.

5. The debtor's voluntary return before suit against the sheriff, healed the breach. Anonymous—1 Strange, 423. *Dole* v. *Moulton*, 2 John. Cas., 205.

6. The court erred in its charge as to the presumption of the prisoner's having been received back in the absence of the jailer's testimony. The law presumes the sheriff to have received him. *Drake* v. *Chester*, 2 Conn., 476. This presumption attaches to the jailer, as he is vested with all the power of the sheriff in these matters. *Huntington* v. *Williams*, 3 Conn., 430. The jailer should therefore have been called by the plaintiff, and as he failed to do so or account for his absence, the presumption of a reception still exists, and can not be rebutted by other evidence. *Kelsey* v. *Hanmer*, supra.

7. The employment of the debtor by the jailer, in the manner stated in the motion, constitutes a voluntary escape. *Wilkinson* v. *Salter* & *Perry*, Hard. Cas., 310. *Colby* v. *Sampson*, 5 Mass., 310. *Skinner* v. *White*, 9 N. Hamp., 205. *Steere* v. *Field*, 2 Mason, 526. 1 Sw. Dig., 545. *Wilkes* v. *Slaughter*, 3 Hawk., 211. The fact of the debtor being on the limits, can make no difference, for the limits are but an extension of the walls of the prison ; and the law of escapes applies to the limits in the same manner as to the walls of the prison itself. *Drake* v. *Chester*, 2 Conn., 476. *Seymour* v. *Harvey*, 8 Conn., 69. *Peters & Gedney* v. *Henry*, 6 Johns., 121. *Huntington* v. *Williams*, 3 Conn., 429, 430. *Dole* v. *Moulton*, 2 John. Ca., 205, and *Steere* v. *Field*, supra. A voluntary escape in the jailer is a voluntary escape in the sheriff. Rev. Stat., tit. 47, sec. 17. *Huntington* v. *Williams*, supra. *Commonwealth* v. *Drew*, 4 Mass., 395.

8. As to duty of t he sheriff to inform the debtor of the jail limits. *Ely & Parsons* v. *Parsons,* 2 Conn., 385.

9. As to the alleged departure by going into Benton's house. The house was within the practical limits of the highway, which it is agreed was within the liberties. *Ely & Parsons* v. *Parsons,* supra. Unimportant variations in the road fence should not be allowed to entrap those who conform to the very letter of the record.

*Brockway* and *Hyde,* against the motion.

1. The copy of the deed from Benton to Paulk was admissible. *Kelsey* v. *Hanmer,* 18 Conn., 311. 1 Greenl. Ev., sec. 483, 484. *Scanlan* v. *Wright,* 13 Pick., 523. *Clark* v. *Mix,* 15 Conn., 174.

2. Declarations of clerks and others that there was no record of jail limits were not admissible. 1st. It is not provided by law that the limits should be matter of record. 2d. If it were, and the records were lost or destroyed, they might be proved by parol. 3d. Misconduct of clerk or other persons can not charge sheriff. *Farley* v. *Randall,* 22 Pick., 146.

3. The debtor's intention to commit no breach, does not affect the case. It is not a question of intention. 1 Sw. Dig., 544. *Burroughs* v. *Lowder,* 8 Mass., 373. *Cargill* v. *Taylor,* 10 Mass., 206.

4. Receipt of Earl Cummings properly rejected, for want of notice. Rev. Stat., tit. i., sec. 90; and see rules, in 18 Conn., 576.

5. A voluntary return of a prisoner within the limits, before suit brought against the sheriff, does not purge the escape. *Seymour* v. *Harvey,* 8 Conn., 64. *Drake* v. *Chester,* 2 Conn., 473.

6. The charge in relation to the question whether the sheriff had received the prisoner back, was correct.

7. The employment of the debtor by the jailer, in the manner stated, does not constitute a voluntary escape. Though it might be an escape to entrust a prisoner who

was not entitled to the liberties, with the keys of the outer doors, so as to remove all obstructions to his departure, it by no means follows that it would be such an escape in the case of a prisoner entitled to the liberties. The cases cited in 2 Mason, 526, and 5 Mass., 310, are both where the prisoners were not entitled to the liberties; and that of *Huntington* v. *Williams*, 3 Conn., 427, rests on the ground of agency.

8. Neither sheriff nor jailer is bound to inform a prisoner of the precise limits. *Farley* v. *Randall*, 22 Pick., 146. The sheriff, in admitting a prisoner to the liberties, is merely performing a duty devolved upon him by law. He has no power to establish or define the limits. Those acts are done by other officers of the law, whose doings are as accessible to the prisoner as to the sheriff.

9. The removal of the fence could not alter the limits as once defined. *Ely* v. *Farsons*, 2 Conn., 382.

STORRS, J.    1. If the deed, offered in evidence by the plaintiff, had been given to the defendant, or was presumably in his possession, secondary evidence of its contents would not be admissible, unless the latter had been notified to produce it and refused to do so; or, if it had been given to the plaintiff, such evidence would not be allowed without proof of its loss. *Commonwealth* v. *Emery*, 2 Gray, 80. But neither of these was the case here. The deed was given to a stranger to the suit, and was presumably in his possession, as it is the universal practice here for every grantee of real estate to retain his title-deeds when he conveys the property, and not, as in England, to pass them to his grantee. In view of this practice, which would oftentimes render it extremely inconvenient to produce remote original title-deeds of lands, and of the provisions of our registry system, which requires those deeds to be recorded, and upon official copies of the records of which, reliance may safely be placed as to the contents of those deeds, our courts have departed from the common law rule in regard to the admission of secondary

evidence of their contents, and held that where a conveyance of real estate, which is required to be recorded, is to a person not a party to the suit, it is competent, and sufficient in the first instance, to prove the contents of it by a copy certified by the recording officer, without laying a foundation for such proof by first accounting for the non-production of the original deed, and that such copy is equivalent to proof of the execution and contents of the deed by common law evidence; and such is now the established rule. *Kelsey* v. *Hanmer*, 18 Conn., 311. *Talcott* v. *Goodwin*, 3 Day, 267. *Clark* v. *Mix*, 15 Conn., 174. The superior court therefore properly admitted the copy of the deed offered by the plaintiff.

2. The discharge offered by the defendants was properly excluded. It clearly could not, under our statute allowing matters in avoidance to be given in evidence under the general issue, (Rev. Stat., tit. i., sec. 90,) have been used as a complete defense, without previous notice to the plaintiff. Nor is it very obvious on what ground a discharge, which extinguishes the right of action, can in any case be allowed in evidence only in mitigation of damages. But, without determining that point, if it may be used for that purpose, its effect would be to reduce the damages to a merely nominal sum, and it would therefore have substantially the same effect as if it were used as a bar to the action. Justice to the plaintiff therefore requires that he should have notice of its introduction, as well when it is to be used for the first of these purposes as for the other; and he might be easily and fatally entrapped, if it could be introduced in mitigation of damages without notice, because a defendant, for the sake of the advantage of springing upon the plaintiff a discharge which he would have no reason to expect, and would not therefore be prepared to meet, might be willing to submit to a judgment for nominal damages only. It would therefore be sanctioning a mere evasion of the statute, to permit a discharge to be thus used without notice.

3. There is no foundation for the claim of the defendants, that it was incumbent on the plaintiff to introduce the jailer as a witness, to prove that the plaintiff refused to receive

Cummings back into custody after his escape. The defendants, by the ruling of the court, had the benefit of the presumption that the plaintiff so received him on his return to the jail limits; and if the jailer had authority to receive him back in behalf of the plaintiff, it was competent for the latter to remove that presumption by any evidence which was in its character proper to disprove it, and the proof adduced by him was plainly proper for that purpose. There is no rule requiring such proof to come from one person rather than another who is a competent witness. The jailer, moreover, was as competent a witness for the defendants as for the plaintiff, on the question whether the latter received Cummings back into his custody.

4. We are of the opinion that the services which the defendant claimed that the jailer employed Cummings to perform in and about the jail, did not constitute an escape in him, as the defendants insist. If they did, it was clearly a voluntary escape on the part of the plaintiff, and would therefore be a bar to this suit; as there could afterward be no return or recaption of Cummings which would reinstate him in the custody of the plaintiff, and consequently there could be no subsequent escape by him. Those services were performed by him within the limits of the jail liberties, as designated by the county commissioners, while he was at large within those liberties, under the bond on which the present suit is brought; and the jury have found that they were performed under the direction and supervision of the jailer, and that the latter did not abandon his office.

The defendants derive no aid from the authorities adduced by them in support of their claim on this point. They are all cases where the question relates to the effect upon a sheriff, of his allowing a prisoner to enjoy the liberties of the jail, without requiring the bond provided by the statute; or of permitting him, while in close custody, and without having given such a bond, to do certain acts incompatible with that custody of him which is essential in order to constitute an imprisonment. The first of these classes of cases is obviously inapplicable to the present case, in which the prisoner

was at large within the liberties of the jail, on a bond given pursuant to the statute, and the acts relied on by the defendants were done within those limits. Those liberties are considered only as an extension of the walls of the jail, and a departure by a prisoner from those walls is therefore plainly not an escape, so long as he keeps within the liberties. *Seymour* v. *Hawley*, 8 Conn., 70. 2 John. Cas., 207. 2 T. R., 131. This disposes of the claim of the defendants so far as it rests upon the acts of Cummings which were done without the walls of the jail. In regard to the other class of cases cited, whatever might be thought of their applicability to a case where the prisoner is at large within the liberties, on a bond executed according to the statute, they furnish no ground for the claim that the acts which, in the present case, were claimed to have been done by the prisoner, with the allowance of the sheriff, amounted to an escape of such prisoner. He was not in the custody of the sheriff within the walls of the jail, and there was plainly nothing in the employment of him by the sheriff under his direction and supervision, to perform the acts which he did, which was incompatible with the custody in which he was held by the sheriff. Nor did such employment imply any permission to him to leave the jail liberties, or furnish him any facility for doing so which he did not previously have, (even if these would have any effect on the sheriff so long as he did not avail himself of them,) or, in short, evince any relinquishment by the sheriff of his previous authority over him as his prisoner. The main object of the statute which provides jail liberties for imprisoned debtors, was to enable them to obtain employment by which they might earn a livelihood for themselves and their families; and it would practically go far toward frustrating that humane purpose, especially in some of the places where jails are located, if they were not allowed to engage in such services as Cummings was employed to perform. We can perceive no imaginable reason why a jailer or sheriff might not, without a violation of duty, employ him as well as any other person, to perform those services.

5. It is unnecessary to consider what would have been the effect, if the county commissioners, when they designated the liberties of the jail, and determined that opposite the residence of Benton they should embrace the highway, had provided that the liberties should be contracted or enlarged according as the highway might afterward be narrowed or widened; because, on the facts conceded in this case, there was no such provision. Such is not the true construction of the designation of the liberties by the commissioners. They fixed the lines of the highway as they then existed, as the limits of the liberties. By no rule of construction would such a designation import that they should change with subsequent alterations of the lines of the highway. Whatever alteration therefore might subsequently be made, the limits of the jail liberties remained as originally designated. But it did not appear that there had since been any alteration of the limits of the highway, either practically or otherwise. Nor did it appear that there was any change in the location of the fence for any other purpose than to accommodate the occupants of Benton's house, or that it was designed as an alteration of the highway. The case of *Ely* v. *Parsons*, 2 Conn., 382, is not applicable to the present, as the point there involved related to the construction of the original designation of the liberties, which were not claimed to have been subsequently altered. The charge on this point was therefore correct.

On the other points made by the defendants on the argument, the rulings complained of were too plainly correct to require argument in their support.

A new trial should not be advised.

In this opinion HINMAN, J., concurred. WAITE, C. J., was not present.

New trial not advised.