UNDERWOOD TYPEWRITER COMPANY *vs.* THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

A motion to correct the finding by the insertion of mere testimony or of parts of the draft-finding which the court has marked "proven," or by the elimination of undisputed facts, should be denied.

The term "market value" implies the existence of a market, or conditions, in which there may be found a willing seller and a willing and able purchaser; it connotes selling and buying without constraint or compulsion, and it ordinarily means a price fixed by sales in the way of business, and is established when other property of the same kind has been bought and sold in so many instances that a value may reasonably be inferred.

Section 1197 of the General Statutes, which provides that "the present true and just value of any estate shall be deemed by all assessors and boards of relief to be the fair, market value thereof, and not its value at a forced or auction sale," assumes the existence of a market in which there are willing sellers and willing, able buyers of property like that to be assessed, and in which sales are or have been made or may fairly be expected in the usual and natural way of business; and without proof of a market of that kind, there is no proof of a market value. (*One judge dissenting.*)

Where taxable property has no market value, the general law prescribed in § 1183 of the General Statutes, that all taxable property shall be listed at its "present true and actual valuation," is not

nullified or modified by the particular rule of market value in § 1197, because the law never requires the impossible; and in such a case the assessment must be made under a different rule of valuation.

One method of arriving at "present true and actual valuation" is to ascertain the original cost of construction and improvements, deducting therefrom depreciation, and adding thereto the increase in cost of materials and labor, if any, over the cost at the time of construction; another method is to estimate the cost of reproduction or replacement and to deduct therefrom depreciation. Either method and its results, when reasonably applied, may be of service in ascertaining actual value, but the result of neither should necessarily be taken as the invariable measure of value.

Under any method of valuation the increase of cost of construction, if any, over original cost, is an important factor, and the fact that costs of construction are falling at the time of valuation, or likely to fall, is immaterial, because future changes in costs can only affect future valuations.

In the present case the assessors of the defendant City of Hartford valued the land of the plaintiff at $130,000 upon the list of 1920, and its buildings and fixed equipment at $2,302,700. The plaintiff appealed to the Superior Court from the refusal of the board of relief to make any reduction in the assessment. At the trial, the plaintiff offered evidence of the market value of its land and the replacement or reproduction value of its buildings, but offered no evidence of the market value of the buildings. The court found that the fair market value of the plaintiff's property was $1,700,000 and reduced the assessment to that figure. In its memorandum of decision and in setting out the facts upon which its judgment was based, the court did not include the value of the fixed equipment, although, in the finding, the court stated that the value of the fixed equipment was included in its assessment and was equal to twenty-five per cent of the cost of the buildings. *Held:*—

1. That the finding of the court as to the market value of the plaintiff's buildings was made without evidence, and was, therefore, erroneous. (*One judge dissenting.*)

2. That the judgment of the court was erroneous because of the omission therefrom of the item of fixed equipment.

3. That the inventory and appraisal of the plaintiff's property, taken, compiled, typewritten and signed by persons not present at the trial, was inadmissible and was properly excluded.

Argued May 1st—decided July 27th, 1923.

APPLICATION in the nature of an appeal from the refusal of the board of relief of the defendant city

to reduce the assessed valuation of the plaintiff's property, taken to and tried by the Superior Court in Hartford County, *Avery, J.;* facts found and judgment rendered reducing the assessment complained of, from $2,432,700 to $1,700,000, from which the defendant appealed. *Error and new trial ordered.*

In October, 1920, the plaintiff made out and handed to the assessors of the City of Hartford a sworn list of its property liable to taxation in that city on October 1st, 1920, and included therein its main factory plant consisting of certain land and buildings, with their fixed equipment, but without any machinery or personal property therein. The area of the land is 315,776 square feet and it occupies an entire square, bounded by three streets and Park River, and located in the manufacturing district of the city. There are seventeen separate buildings, of heavy mill construction, all but one built since 1905, adapted especially to the plaintiff's business of manufacturing typewriters and wholly occupied and used in its business. The external area of these buildings is 856,352 square feet. The total cost of the land and buildings alone was about $1,300,000, and the additional cost of the fixed equipment therein was $181,144. In the year 1920 these three items were carried on the books of the plaintiff at a valuation of $1,448,726. This plant is one of the largest manufacturing plants in the City of Hartford. Before October of the year 1920, business conditions in Hartford had been changing and the demand for factory property was not as brisk as it had been theretofore. Since 1916 the cost of erecting such buildings as those of the plaintiff had increased from ninety to one hundred per cent, and in the spring of 1920 the prices of labor and building materials of all kinds had risen to the highest point known in this country in many years. During the hearing on this application,

there was no proof of sales of any plant similar in size and character to the plaintiff's plant, and it would have been difficult to find a purchaser for such a plant in October, 1920.

In the tax list of the year 1919, the assessors of the City of Hartford had set the valuation of this main factory plant of the plaintiff at $880,000. No addition thereto was made before October 1st, 1920. In its list for 1920, the plaintiff placed the same valuation on this property. This valuation the assessors increased to $2,432,700, fixing the value of the land at $130,000 and of the buildings and fixed equipment therein at $2,302,700. From this assessment the plaintiff appealed to the board of relief of the city, which refused to make a reduction. Thereupon the plaintiff made this application to the Superior Court for relief. That court set aside the action of the board of relief, and reduced the assessment to $1,700,000.

*Walter Stanley Schutz* and *Robert P. Butler*, for the appellant (defendant).

*William BroSmith*, with whom, on the brief, were *Robert C. Dickenson* and *Allan E. BroSmith*, for the appellee (plaintiff).

BURPEE, J. The question first presented to the Superior Court was whether the plaintiff, as it alleged in its application, was aggrieved by the action of the board of relief of the defendant city. General Statutes, § 1240. The action specified was its refusal to reduce the valuation of the plaintiff's main factory plant which the city tax assessors had made. Having heard the parties, the court found that the valuation was excessive, and that the refusal of the board of relief was erroneous. Consequently the plaintiff was aggrieved, and had the right to call upon the Superior

Court to exercise its statutory powers "to grant such relief as shall to justice and equity appertain." General Statutes, § 1243. This the court proceeded to do, and, after thorough investigation, it reached its conclusion, stated in its judgment, that the "fair market value of . . . the land and buildings comprising the main factory plant, on October 1, 1920, was $1,700,000"; and thereupon adjudged that that property be set at that amount in the plaintiff's tax list of that year. In its appeal to this court, the defendant claims that the court below erred in reaching this conclusion.

In its memorandum of decision, the court says: "Section 1183 of the General Statutes provides that buildings used for manufacturing purposes 'shall be set in the list at their present true and actual valuation' and by Section 1197, the rule of valuation is established, as follows: ' The present true and just value of any estate shall be deemed by all assessors and boards of relief to be the fair, market value thereof, and not its value at a forced or auction sale.' The fair market value, therefore, of this property as of October 1, 1920, is the valuation at which it should be set in the list by the assessors." Afterward it states in this memorandum that "the entire evidence in this case shows . . . that the fair market value of the land and buildings as of October 1, 1920, was $1,700,000." In its judgment the court sets out the same fact in the same language, as quoted above. In its finding of facts for this appeal, the court again explicitly recites that "the entire evidence established the fair market value of the property involved in this appeal" at $1,700,000. It is obvious, then, that the court below based its final judgment upon its conclusion respecting a fair market value of the property. In this, we think, there was error.

In the first place, upon examination of the record we fail to discover the evidence which establishes any market value of this property, or any evidence which can be reasonably construed to prove a fair market value within the recognized meaning of the term. Ordinarily market value means a price fixed by sales in the way of ordinary business, and is established when other property of the same kind has been bought and sold in so many instances that a value may reasonably be inferred. The term contains the conception of a market, or conditions, in which there may be found a willing seller and a willing and able purchaser. The phrase connotes selling and buying without constraint or compulsion. 26 Cyc. 819; 3 Words & Phrases (2d Series) 301; Century Dictionary. But the trial court has said, and the evidence before us supports its statement, that there was no proof of sales of property similar in kind and size to the plaintiff's property, and that it would have been difficult to find a purchaser of such property about October 1st, 1920. Considering the magnitude of this property, its location, its cost, the purpose and use for which it was constructed, adapted and exclusively occupied, and the impossibility of changing that purpose and use without great loss or expense, the conclusion is reasonable, if not inescapable, that there was no purchaser at that time who would be able and willing to pay for it any price which its owner could fairly be expected to accept. In fact, at that time there was no market for this property and it did not have a value which was a fair market value within the proper and approved meaning of the term. Indeed, the plaintiff, its owner, did not undertake to show that it had. Its counsel asked one witness "what would be the fair reproduction price per square foot of that plant in 1920," and asked two others what in their opinion "was the just and true value" of the property

at that time.   No question relating to or involving fair market value was put to any witness.

Nor did the defendant attempt to offer such evidence. Two of its witnesses testified as to the replacement value only, which they obtained by multiplying the inside area of the buildings by an assessment unit which they had assumed for the purpose of taxation. Another witness stated that this replacement value, ascertained by the same method, in his opinion was the fair market value of the property; but this opinion was worthless so far as it involved a market value, because the witness declared that it was not based upon or influenced by sales of similar property, but only upon the hypothesis that there was then at hand a purchaser ready and willing to buy; and his estimate was admittedly determined by the cost of reproduction less depreciation.   Another witness for the defendant stated that the cost of reproduction, less depreciation, was the "sound value," and that was the market value, "or the value a willing purchaser will pay to a willing seller"; thus assuming the existence of a market in which there was a willing purchaser.   We find no evidence in the record which establishes a fair market value of the plaintiff's property as that term is commonly understood and is used in the statute.   Therefore we are constrained to hold that the court erred in finding this material fact without evidence.   The judgment, manifestly based upon a conclusion thus erroneously made, must be set aside.

In this State the rule of assessment of property liable to taxation has for many years been fixed by the statute to which the trial court referred in its memorandum of decision.   General Statutes, § 1183.   It prescribes that all taxable property shall be set in the owner's list at its "present true and actual valuation."   This language is plain and its meaning is unmistakable, and the

provision is mandatory and unavoidable. For the purpose of taxation no valuation of any taxable property except its "present true and actual valuation" is legal, and no taxation is valid which does not strictly comply with the law. The duty imposed upon tax assessors by this law is to find the "present true and actual valuation" of any property to be taxed, and to put it into the owner's list at that valuation.

If they fail or neglect to do this, the assessment will be illegal, and should be corrected by the board of relief upon appeal. If that board refuse or neglect to do this, the power of the Superior Court may be called into action to grant relief to the person aggrieved. But the board of relief may correct an illegal assessment, and the Superior Court may grant relief from an illegal assessment, only by obeying the mandate of the law to set the owner's taxable property in his list at its "present true and actual valuation." This is the requirement imposed upon each tribunal in the process of taxation. General Statutes, § 1197, under the heading "rule of valuation," provides as follows: "The present true and just value of any estate shall be deemed by all assessors and boards of relief to be the fair, market value thereof, and not its value at a forced or auction sale." Evidently the word "actual" in § 1183 is used in the same sense as the word "just" in § 1197. It is also evident that the words "market value" in this statute mean a value in a market, in a place or in conditions in which there are, or have been or will be within a reasonable time, willing sellers and able and ready buyers of property like that to be assessed, and in which sales are or have been made, or may fairly be expected, in the usual and natural way of business. That the idea of sales and of unconstrained sellers and ready buyers is in the essence of the meaning of the phrase "market value," is indicated in the

terms of the final clause: "and not its value at a forced or auction sale." We think therefore that, without proof of a market of this kind, there could be no proof of a market value.

But it does not follow that when the tax assessors cannot ascertain the market value of certain property, they cannot determine the valuation of that property for legal taxation. If the rule of taxation provided by statute cannot be applied, the law still commands that all property liable to taxation shall be put in the owner's list at its present true and actual valuation. The general law is not nullified or modified by the particular statute which lays down a rule of valuation. But the law never requires the impossible. Hence, if the rule indicated cannot be followed, other means must and may be found by which the assessors can perform the duty the law has put upon them. One of the means which have been approved and sometimes used is to ascertain the original cost of construction and improvements, deducting therefrom depreciation, and adding the increase in cost of materials and labor, if at the time of valuation there is such increase over the cost at the time of construction. Another method frequently adopted is to determine what it will cost to reproduce the plant, or the cost of replacement at the time of valuation, and to deduct therefrom for depreciation in the existing plant. Both methods may be and have often been resorted to and considered in fixing present true and actual value. *Pioneer Telephone & Telegraph Co.* v. *Westenhaver,* 29 Okl. 429, 118 Pac. 354. But the result of neither should necessarily be taken as the invariable measure of value. Either method and its result when reasonably applied may be of service in ascertaining the actual value. *Smyth* v. *Ames,* 169 U. S. 466, 547, 18 Sup. Ct. 418; *Minnesota Rate Cases,* 230 U. S. 352, 452, 33 Sup. Ct. 729.

In the case of *Greenwoods Co.* v. *New Hartford*, °65 Conn. 461, 32 Atl. 933, JUDGE LOOMIS, acting as State Referee to hear and report the facts in an appeal from a tax assessment, found the actual value of four mills to be $170,000; and this court confirmed that valuation "because these sums are the actual value of this property." The report does not disclose by what method and upon what evidence that valuation was determined; but it is manifest that it was the actual, not the fair market value, which was sought for, ascertained and fixed. In the present case the Superior Court had before it evidence showing the original cost of the buildings to be assessed for taxation, and of the cost of their reproduction or replacement, and of their depreciation. It had also evidence of the increased cost of materials and labor necessary to the construction of such buildings in 1920 over the cost when they were built. The law requires the Superior Court to seek for, ascertain and fix the actual value of this property as it was on October 1st, 1920. For that particular purpose, all of the evidence before the court should have been considered and weighed, and to it should have been applied any proper and available method of valuation. But in any such method the increase of cost of construction, if any were proved, was an important factor. It was indispensable in reckoning the cost of replacement or true valuation of the property on October 1st, 1920. Its influence was not affected by the fact that the costs of labor and material were then at the peak, or that they were falling or likely to fall. These then existing costs must be reckoned upon in the valuation then being made, leaving future changes in costs to be weighed and to have their proper effect in future valuations. This principle has been declared in the so-called rate cases, some of which have been cited above. More

recent cases are the following: *State of Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri*, 262 U. S. 276, 43 Sup. Ct. Rep. 544, decided May 21st, 1923; *Bluefield Water Works & Improvement Co.* v. *Public Service Commission of West Virginia*, 262 U. S. 679, 43 Sup. Ct. Rep. 675, decided June 11th, 1923. In our opinion, the same principle should be applied in the valuation of property for taxation.

In the record it appears that the value of the plaintiff's land was a comparatively unimportant part of the total value of its property to be assessed, and that evidence was produced concerning its market value. To establish a valuation of its buildings, the plaintiff presented evidence of the cost of reproduction, in which was reckoned the cost of labor and materials prevailing in 1920; and its witnesses testified that these results, with reduction for depreciation, indicated "the true and just value" of the buildings, in their opinion. The tax assessors testified that by the same method they fixed the "replacement value" of these buildings, which they considered the proper valuation for assessment purposes in 1920. To the same effect is the testimony of the defendant's professional expert. The trial court in its memorandum of decision criticizes this method of valuation and apparently disregards the evidence of the results obtained thereby, because "the cost of reproduction based upon the high prices of that year would not necessarily represent the fair market value of property as of that date." Observing that the record discloses that this evidence was not introduced to "represent the fair market value of property," it should have been considered and given great weight in estimating the then present true and actual valuation of these buildings, which plainly appears to have been the purpose for which it was offered and should have

been taken. Moreover, if this evidence were to be disregarded, there would be found in the record no evidence of the value of by far the largest part of the plaintiff's property, whether market value or actual value, and no evidence upon which to base a valuation of any kind. The high cost of material and labor prevailing in 1920 was a prime factor in the estimate made by every witness whose testimony appears in the record.

The language used by the court below in its memorandum of decision and in setting out the facts upon which its judgment is based, specifically includes the value of the plaintiff's land and buildings in the assessment of the property under investigation. It does not mention the value of the fixed equipment in the buildings, which was admitted to be more than $180,000, and found to equal twenty-five per cent of the cost of the buildings. Examination of this finding and of the figures given in the evidence seems to confirm the inference that this item was omitted from the valuation of $1,700,000 which the court ordered to be set in the plaintiff's tax list. In its finding of facts for this appeal, however, the court states that the value of the fixed equipment was included in its estimate of the market value. If so, the judgment as it stands is erroneous because of the omission of this item.

The ruling of the trial court upon the defendant's motion to correct the finding was correct. To ask for the insertion of mere testimony, or of parts of the draft-finding which the court has marked "proven," or that undisputed facts be struck out, is futile. The inventory and appraisal of the plaintiff's property, taken, compiled, typewritten and signed by persons not present at the trial, were not admissible in evidence. They might perhaps be used to aid the memory of a witness in testifying to facts within his knowledge.

The trial court properly excluded such documents for any other purpose.

The assignments of error in this appeal are not specific and do not fully and distinctly present the questions of law which must be decided in any just determination of this controversy. But because of the importance of the decision of this case, both to the parties and the public, we have not directed our examination of the record strictly to the matters referred to in the reasons of appeal, but have extended it to include matters which should be considered, discussed and settled before a legal and fair disposition of this appeal can finally be made; for the errors which we have pointed out are sufficient to entitle the defendant to a new trial, in which the true and actual valuation of the estate in question shall be fixed according to the principles of law.

There is error and a new trial is ordered.

In this opinion WHEELER, C. J., CURTIS and KEELER, Js., concurred.

BEACH, J. (dissenting). Section 1197 of the General Statutes, subtitle, "Rule of valuation," reads as follows: "The present true and just value of any estate shall be deemed by all assessors and boards of relief to be the fair, market value thereof, and not its value at a forced or auction sale." The first six words of the section are to be compared with §§ 1183 and 1184, providing in general that real estate shall be set in the tax lists at its "present true and actual valuation," and personal property at its "then actual valuation."

These statutes go back to 1851, and in the Revision of 1866, p. 709, § 1197 is found as a part of § 8, in the following form: "The present true and just value of any estate, either real or personal, liable to be assessed

by virtue of the provisions of this Act, shall be deemed and taken, by the assessors and boards of relief of the several towns, to be the fair, market value thereof, being the price which could be obtained therefor at private sale, and not its value at a forced or auction sale."

In 1875 the revisers condensed the rule of valuation into its present form, presumably without any intent to change it, by the omission of a part of the explanatory phrase "being the price which could be obtained therefor at private sale, and not its value at a forced or auction sale." In its original form the rule of valuation was manifestly capable of application to any estate, and was intended to be applied universally. That intent is still expressly manifested by the words "any estate" and "all assessors and boards of relief." I think it should not be subverted by putting on the words "fair, market value thereof," a construction that could not have been put upon them before the statute was condensed; to wit, that fair, market value means a price established by sales in the ordinary course of business, followed by the conclusion that the statutory rule is therefore inapplicable, unless there is an existing market for the property in question. Still less do I think that the courts have any authority to adopt a different rule in such cases, and thus to open the door to discriminations which the General Assembly has attempted to prevent.

The valuation of public-service plants by present cost of reproduction, for the purpose of fixing rates, or determining whether they are confiscatory, may ascertain fairly enough their value as investments in the hands of their owners. But the value of a manufacturing plant as a going concern in the hands of its owners, is something quite different from its fair market value at private sale to a willing purchaser;

and this difference in value is, in effect, otherwise taxed under our corporation income tax statute.

The opinion also holds that the finding of the trial court as to fair market value was a finding without evidence. I think there was legal evidence sufficient to support the finding. The fair market value of any real estate is more or less a matter of estimate. Recent sales of similar parcels in the neighborhood furnish the best evidential basis for such an estimate, but not the only possible basis. Otherwise most Connecticut real estate could not have a fair market value. If there are no such sales, I think the assessed value,—when the statutory rule has presumptively been followed,—or the original cost minus depreciation, or the present cost of reproduction, may be resorted to, as they were in this case; but only as furnishing some evidential basis for the estimate, in the absence of a better one, and not as substitutes for the statutory rule of fair market value.