THE LOMAS & NETTLETON COMPANY *vs.* THE CITY OF WATERBURY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued October 9th—decided December 1st, 1936.

*Charles M. Lyman,* for the appellant (plaintiff).

*Charles O'Connor* and *Timothy S. Sullivan,* for the appellee (defendant).

BANKS, J. The plaintiff is the owner of an apartment house on North Main Street in Waterbury which was assessed upon the list of 1934 as follows: land, $15,000, apartment building, $45,600, garage, $800, total, $61,400. The plaintiff, claiming this assessment to be excessive, brought this action under General

Statutes, Cum. Sup. 1933, § 328b (now Cum. Sup. 1935, § 375c), which provides that "when it shall be claimed . . . that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owners thereof, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the Superior Court . . ." The court found that the assessment was not manifestly excessive and determined the value of the buildings to be $62,500 and of the land, $16,500, a total of $79,000. The appellant's brief states that the sole question raised by this appeal, aside from two rulings on evidence, is as to the correctness of the trial court's methods of determining the value of business real estate for taxation purposes.

Section 1143 of the General Statutes provides that property of this character shall be set in the list at its "present true and actual valuation," and § 1149 that the present true and actual value of any estate shall be deemed to be "the fair market value thereof." There had been no sales of property of this character in Waterbury during the last five years and it was conceded that its market value was not ascertainable. Its "true and actual valuation" must therefore be determined by some other method of valuation. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 Atl. 91.

Three methods were used by the experts in this case to determine the value of the property, (a) reproduction cost less depreciation and obsolescence, (b) capitalization of gross income, (c) capitalization of a stabilized net income. The court held that all three were proper methods and should be used to check the

results obtained. Each of these is an approved method of ascertaining the actual value of real estate for purposes of taxation. We so held as to the method of reproduction costs in *Underwood Typewriter Co.* v. *Hartford,* supra; as to the capitalization of gross income in *Somers* v. *Meriden,* 119 Conn. 5, 174 Atl. 184; and in *Metropolitan Life Ins. Co.* v. *Bassford,* 120 Conn. 384, 389, 180 Atl. 692, sustained a holding of the trial court that no one method was necessarily controlling, and that consideration should be given to them all in arriving at the value of the property. The contention of the plaintiff is that property of this character can have only a use value, and that the controlling and practically exclusive method of determining its actual value is by capitalizing its earning capacity—a method which it terms "capitalization of stabilized net income."

Plaintiff's building is a four-story apartment house of brick and marble construction. On the first floor are four stores and the three upper floors consist of seventeen two-room apartments and sixteen one-room apartments. The actual gross rental received from the building for the years 1932 to 1935, inclusive, averaged $7324.93. The actual expenditures in maintaining the building during the same period averaged $7191.25. The plaintiff contends that where, as here, the actual figures of income and expenses over a period of four years are available they establish the use value of the property with almost mathematical accuracy, and that a valuation thus based upon the facts should be controlling and render immaterial other methods which involve speculative factors based upon testimony of expert witnesses employed by the parties.

The actual figures of income and expenditure disclose that this building produced substantially no net income during the years under consideration. If its

value were to be measured solely by its actual earning capacity it would be practically worthless. Such a result would tend to discredit a valuation thus ascertained. Appreciating this, plaintiff adopts so-called "stabilized figures" of income and expense which it claims represent the reasonable expectation of what these items should be under normal conditions, and using these figures arrives at a "stabilized net income" of the property, the capitalization of which, it claims, should conclusively establish its value. As pointed out in the memorandum of decision of the trial court, each one of these items of income and expense immediately becomes a matter of opinion as to which the experts differed widely, thus depriving the result of that mathematical accuracy claimed by the plaintiff to follow from the use of actual figures of income and expenditure. Thus the court has found from the testimony of certain experts that under normal conditions the reasonable expectation is that the items of expense, exclusive of taxes, depreciation and obsolescence would total $3200 per year, while the plaintiff's claim, based upon the testimony of its experts, is that this total should be $4515.

It is true, as we said in *Somers* v. *Meriden,* supra, that earning or income producing capacity is a factor in valuation for taxation purposes, and that it is often a reasonable assumption that property is worth a sum capitalized on the basis of its average earning capacity. In that case, we held that it was open to the trial court to conclude from the evidence that the percentage adopted in capitalizing gross income (ten) was sufficient to cover legitimate deductions and a fair net return to the owner, and to regard the result of capitalization on that basis as, although not the sole, a very important consideration in arriving at a valuation. Here the trial court has found, upon sufficient

evidence, that gross income should be capitalized at 12 to 14 per cent to give a fair indication of value, a conclusion more favorable to the contentions of the taxpayer than that arrived at in the *Somers* case. The cases in other jurisdictions agree that, while the income or rental value of real property is a proper element for consideration in determining its value for purposes of taxation, it is not the sole criterion, and is not conclusive or necessarily controlling on the question, but other factors should also be considered in determining the valuation. Annotation to the *Somers* case, 95 A. L. R. 442, 449, and cases there collected.

Many factors may enter into the determination of the value of a piece of property. Its value is, in the final analysis, a matter of opinion. *Ford* v. *Dubiskie & Co., Inc.*, 105 Conn. 572, 580, 136 Atl. 105. The determination of its value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. *Appeal of Cohen*, 117 Conn. 75, 85, 166 Atl. 747. The trial court's conclusion as to the value of this property was necessarily based largely upon the opinion of the real-estate experts and finds support in their evidence. That its valuation was that reached by the application of the reproduction cost method does not invalidate the result. So far as appears it gave consideration to all the elements of value and methods of ascertaining value proper to be considered. It was not bound to base its determination of value solely upon the result obtained by capitalizing the "stabilized net income" of the property to the exclusion of all other methods. Appellant's brief suggests that the court should "consider in the abstract the real philosophy of value" and

not rely too confidently upon its previous decisions which have been limited to a consideration of particular evidence in particular situations. Law suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case.

The trial court found that the result obtained by capitalizing the "stabilized net income" of the property would still be a valuation in excess of that fixed by the assessors. The plaintiff has attacked this finding, but there was evidence to support the figures adopted by the court as to the items of income and expense reasonably to be expected, and that the capitalization of the resulting net income upon a fair basis would produce that result. The finding as a whole is not subject to any correction which would materially affect the decision.

The court admitted in evidence over the objection of the plaintiff, a certified copy of a mortgage of $85,000 upon the property, given in 1925 by the then owners of the property to the plaintiff. The plaintiff's objection was upon the ground that the original of the mortgage must be produced or the failure to produce it be explained. The ancient rule of the common law was that secondary evidence of the contents of a deed was inadmissible in the absence of proof of its loss or destruction. Our courts early departed from the common-law rule to the extent of holding that when a conveyance, which was required to be recorded, was to a person not a party to the suit, it was sufficient in the first instance to prove its contents by a copy certified by the recording officer without first accounting for the nonproduction of the original deed. *Kelsey* v. *Hanmer*, 18 Conn. 311, 318; *Bolton* v. *Cummings*, 25 Conn. 410, 421. The reason for our rule was said to be that it would subject a party to great incon-

venience to require him to produce his title deeds which do not here, as in England, pass with the land, and also because, under the provisions of our recording system, reliance could safely be placed, as to the contents of the deeds, upon the official copies of the records. The latter reason would apply equally to copies of deeds to the parties to the action, but we have not since then been called upon to rule as to their admissibility, though it is every-day practice in the courts to receive them without technical objection on the ground that the nonproduction of the originals has not been accounted for. It has been suggested by high authority that the production of the original instrument should be dispensed with, in the trial court's discretion, whenever, in the case in hand, the opponent does not bona fide dispute the contents of the document and no other useful purpose will be served by requiring production. 2 Wigmore, Evidence (2d Ed.) §§ 1191, 1253. Such a rule, in the author's opinion, would give the common-law rule needed flexibility and avoid technical rulings having no relation to the truth of the case at bar.

Even if technically erroneous, the admission of the certified copy of the mortgage could not have harmed the plaintiff, and therefore was not reversible error. The mortgage was offered by the defendant as tending to prove that the plaintiff had, at the time it was given, valued the property far in excess of the valuation placed upon it by the assessors, and it was admissible for that purpose. The plaintiff subsequently offered the evidence of one of its officers to explain the factors which led to the making of the mortgage. It is perfectly obvious from the record that neither the execution of the mortgage nor its terms were in dispute, and that no useful purpose would be served by requiring the production of the original. Upon an-

other trial the defendant could call upon the plaintiff to produce the original mortgage and upon its failure to do so, could prove it by the certified copy from the land records. A new trial will not be granted because of a ruling which, though erroneous, could not have harmed the appellant. *Carroll* v. *Arnold,* 107 Conn. 535, 544, 141 Atl. 657; *Chatfield Co.* v. *Coffey Laundries, Inc.,* 111 Conn. 497, 503, 150 Atl. 511.

The admission of the opinion of a duly-qualified real-estate expert as to the value of the property before he had stated the facts upon which his opinion was based, as to which he later testified both on direct and cross-examination, was not erroneous.

There is no error.

In this opinion the other judges concurred.