JOHN D. SIBLEY ET AL. *v.* TOWN OF MIDDLEFIELD

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued November 3, 1955—decided January 3, 1956

*Richard C. Parmelee* and *John F. Pickett, Jr.,* with whom, on the brief, was *Aaron J. Palmer,* for the appellant (defendant).

*Bernard A. Kosicki,* for the appellees (plaintiffs).

O'SULLIVAN, J. This litigation came to the Court of Common Pleas as an appeal from the refusal of the board of tax review of the defendant town to reduce assessments on lands and structures either owned by the named plaintiff individually or in his charge as executor of the will of his deceased mother. The court reduced the assessments, and the defendant has appealed.

The finding, which is not subject to any correction of advantage to the defendant, recites the following facts: The defendant in 1952 had a population of approximately 2200. Prior to October 1, 1952, it hired a firm of appraisers to help the board of assessors make one of the periodic revaluations required by law. General Statutes, Sup. 1949, § 183a (as amended, Cum. Sup. 1953, § 847c). Every assessment then made for the year was uniformly fixed at 50 per cent of the fair market value of the property as that value was determined by the assessors. The result of the revaluation, effective on October 1, 1952, was to double, on the average, all prior assessments and to increase the grand list, as had been the defendant's purpose, from $2,750,000 to $4,750,000.

On October 1, 1952, the plaintiff, in his individual capacity, owned certain realty located within the defendant's territorial limits, and, in his representative capacity for the estate of Jennie B. Sibley, deceased, was in charge of other realty similarly located. The plaintiff's own realty consisted of a residence, a garage and two lots containing 1.15 acres of land. The assessment thereon was increased from $10,000 to $22,560 for the list of October 1, 1952. The realty belonging to the estate consisted of five parcels of land with buildings and improvements

thereon. The five parcels were of 3, 3, 9, 14 and 17.7 acres, respectively. The assessment upon the estate's realty was increased from $30,955 to $67,400. From this point on we shall, in the interest of succinctness, refer to all the properties as though they were owned solely by the plaintiff as an individual.

The realty is devoted principally to the business of operating a summer recreational center. The use of the various properties is limited to a period not longer than thirteen weeks, during six of which a maximum of 250 vacationists are accommodated. The recreational business is a highly personal one and its success is due more to good management than to the physical characteristics of the location. The business is owned and operated by a corporation of which the plaintiff is the president, principal stockholder and general manager. He is assisted by a large organization during the resort season.

The fair market values of the various taxable items, as determined by the assessors and later reduced by the board of tax review, are set forth in the footnote.[1] In reaching these figures, the assessors relied on a formula, prepared by the firm of

---

[1] Residence and garage ............................... $33,898
Dining hall ........................................ 42,518
Office ............................................. 16,656
Eleven converted trolley cars ...................... 13,168
Fourteen bungalows ................................. 15,792
Seven cabins ....................................... 13,301
Swimming pool, tennis courts, etc. ................. 14,200
Steam bath ......................................... 1,360
1.15 acres @ $1,000 ................................ 1,150
3 acres @ $1,000 ................................... 3,000
3 acres @ $1,500 ................................... 4,500
9 acres @ $300 ..................................... 2,700
14 acres @ $300 .................................... 4,200
17.7 acres @ $25 ................................... 442

Total ......................................... $166,885

appraisers, by which land was valued at a certain uniform rate per acre or front foot, depending upon its location, quality and actual use or potential possibilities. Pursuant to another formula obtained from the same source, the assessors valued all buildings on the basis of cost of reproduction less an allowance for depreciation and obsolescence. They also used other factors in determining the valuations to be placed on structures. One was a classification multiplier by which older houses were advanced one class higher than if they had been more recently erected. Another was a multiplier applicable to the estimated reproduction costs of structures as classified in six classes. For example, the application of the formula to the plaintiff's residence worked out as follows: The reproduction cost was found to be $49,440; this was raised to $70,092 by using the multiplier for the classification into which the assessors had put the residence; the last-named figure was then lowered to $35,549 by using an arbitrary deductible percentage to cover depreciation and obsolescence. The assessors did not apply a multiplier to the plaintiff's other structures, since they were considered, under the formula, as special-purpose buildings. In setting a value on them, the assessors were not influenced by the physical characteristics of the buildings but rather by the commercial use to which they were put.

Appeals were taken by the plaintiffs from the 1952 doings of the assessors to the defendant's board of tax review. That board lowered the assessment on the residence, exclusive of the land on which it stands, by $5000; it refused to grant further relief. As thus reduced, the assessment upon all the realty was fixed at a figure representing substantially 50 per cent of $166,885, the fair value of the properties

as determined by the assessors and modified by the board of tax review. The fair value of the taxable items, as found by the court, was $80,650.[2] Other facts found by the court will be subsequently recited when we discuss one of the assignments of error.

The court performs a double function on an appeal from a board of tax review. First, it must determine the judicial question whether the appellant has been aggrieved by such action on the part of the board as will result in the payment of an unjust and, therefore, a practically illegal tax. Secondly, if that question is answered in the affirmative, the court must proceed to exercise its broad discretionary power to grant relief. *Wilcox* v. *Madison*, 103 Conn. 149, 150, 130 A. 84; *Ives* v. *Goshen*, 65 Conn. 456, 459, 32 A. 932. We have recently examined the nature of appeals from boards of tax review. In *Connecticut Savings Bank* v. *New Haven*, 131 Conn. 575, 584, 41 A.2d 765, we said: "The valuation of property for assessment purposes has been a vexed and much litigated problem .... The valuation is first fixed by the assessors. An appeal lies to the board of tax review. Both of

---

[2] Residence and garage ............................. $20,000
Dining hall ...................................... 18,000
Office ........................................... 5,000
Eleven converted trolley cars .................... 3,300
Fourteen bungalows ............................... 8,400
Seven cabins ..................................... 4,700
Swimming pool, tennis courts etc. ................ 6,000
Steam bath ....................................... 1,000
1.15 acres @ $1,000 .............................. 1,150
3 acres @ $1,000 ................................. 3,000
3 acres @ $1,000 ................................. 3,000
9 acres @ $300 ................................... 2,700
14 acres @ $300 .................................. 4,200
17.7 acres @ $10 ................................. 200

    Total ........................................ $80,650

these boards are usually elected bodies. A taxpayer who thinks he is aggrieved then has an appeal to the courts, where the matter is tried de novo. [General Statutes § 1800]. The [statute] provide[s], in part, that 'The court shall have power to grant such relief as shall to justice and equity appertain,' and, if it finds that property has been in fact overvalued, it has power to, and should, correct the valuation." This procedure was pursued in the case at bar and is now too firmly entrenched in our law to permit successful challenge as to its validity.

A claim strenuously urged by the defendant is that the court, by refusing to adopt the system employed by the assessors, erred in determining, through other means, the value of the plaintiff's realty. The point which the defendant attempts to make is, as stated in its brief, that the court's refusal violates "the requirement that assessments shall be proportional and applied equally by the same method to all the properties in a town." We know of no requirement that the value of all taxable property must be fixed "by the same method." Desirable as the use of a uniform system may appear to be, it does not follow that no other method than that prescribed by such a system may be utilized. The important thing is to determine what the statute describes as the "present true and actual valuation" of the realty in question, since that valuation is the basis for taxation purposes. General Statutes § 1738.

The expressions "actual valuation," "actual value," "market value," "market price" and, we add, "fair value" are synonymous. *Sanford* v. *Peck,* 63 Conn. 486, 493, 27 A. 1057. Usually, these expressions mean the figure fixed by sales in ordinary business transactions, and they are established when other property of the same kind in the same or a comparable

location has been bought and sold in so many instances that a value may reasonably be inferred. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 334, 122 A. 91. In other words, the best test is ordinarily that of market sales. *Campbell* v. *New Haven,* 101 Conn. 173, 185, 125 A. 650; *New Haven Trust Co.* v. *Doherty,* 74 Conn. 468, 472, 51 A. 130. Where evidence of such sales is not available, other means must be employed to ascertain the present true and actual valuation. *Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 212, 128 A. 413. Thus, the method of reproduction cost has been used. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 A. 91. The method of capitalizing gross income was adopted in *Somers* v. *Meriden,* 119 Conn. 5, 8, 174 A. 184, and that of capitalizing stabilized net income was approved in *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 230, 188 A. 433. No one method is controlling; consideration should be given to them all, if they have been utilized, in arriving at the value of the property. Id., 231. All of the evidence, both that of sales and that of experts testifying on other methods of fixing valuation, is to aid the trier in arriving at a conclusion "which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value, and his own general knowledge of the elements going to establish it." *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747.

The court did not have the benefit of any evidence as to comparable sales, for there had been none. It did, however, hear testimony of experts offered by the parties. Each expert based his opinion on the reproduction cost of the structures less depreciation and obsolescence. Each also offered his opinion on the amount which the entire property would bring,

in an open market, to a willing seller from a willing buyer. No evidence was offered as to the capitalized value of the realty. The court was in substantial accord with the land values set by the assessors. The disagreement arose over the values of the buildings. This came about because, speaking generally, the court relied more on the testimony of the plaintiff's expert than on that of the one offered by the defendant. This was within its right and privilege. It was for the court, in the first instance, to decide in its discretion whether the experts had qualified. *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600. Thereafter, it was for the court to determine what credence should be extended to those who had qualified. *Thaw* v. *Fairfield,* 132 Conn. 173, 179, 43 A.2d 65. The conclusion reached by the court as to the values of the buildings is further fortified by the fact that it visited and inspected the realty, and this action furnished evidence as though the information thus obtained had been presented through the lips of witnesses. *G. F. Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 A. 20. The court was justified in finding the values as indicated above.

The only other claim of error relates to the court's modification of the judgment. The finding shows these further facts: On July 14, 1954, the court filed a memorandum of decision wherein it stated that the total valuation of the plaintiff's property for tax purposes was $80,650 and ordered judgment so to enter. Five days later, the plaintiffs filed an application praying that the judgment be opened and that the court apply the ratio of 50 per cent to the valuation as found by the court and that the assessments be so reduced. On July 27, 1954, the court was not in actual session. On that day, the parties appeared

before the judge who had heard and decided the case. The plaintiffs and the defendant, waiving any objection to the informality of the proceeding, discussed the application with the judge. Later in the day, the court filed another memorandum of decision whereby it opened the judgment and thereafter modified the valuation previously set by reducing it one-half in order to "apply the 50% ratio or rule of reduction" uniformly applied by the assessors to the present true and actual valuation of all taxable realty in the town. The error which the defendant assigns is (1) in the informality with which the application was heard and (2) in the court's action in opening and correcting the original judgment. There is no merit to either of these contentions. The first need not even be discussed. As for the second, it was proper for the court to correct its own judgment during the term within which it was rendered. *Clark* v. *Connecticut Co.*, 132 Conn. 400, 402, 44 A.2d 706; *Varanelli* v. *Luddy,* 130 Conn. 74, 79, 32 A.2d 61; *McCulloch* v. *Pittsburgh Plate Glass Co.,* 107 Conn. 164, 167, 140 A. 114.

There is no error.

In this opinion the other judges concurred.