SHELDON HOUSE CLUB, INC. *v.* TOWN OF BRANFORD

BALDWIN, C. J., KING, MURPHY, ALCORN and MacDONALD, Js.

Argued October 6—decided November 7, 1961

*Macgregor Kilpatrick,* with whom was *Stanley D. Josephson,* for the appellant (plaintiff).

*Richard L. Hershatter,* for the appellee (defendant).

ALCORN, J.  The plaintiff appeals from a judgment of the Court of Common Pleas dismissing its appeal to that court from the action of the board of tax review of the defendant town in refusing to reduce the valuation of the plaintiff's real estate for tax purposes.

In its complaint, the plaintiff alleged that the valuation placed upon its real estate "was not the fair market value thereof on October 1, 1959." The court, in dismissing the appeal, concluded that the plaintiff had failed to meet its burden of proof on that claim.  The plaintiff relied on a sale of all its capital stock on October 29, 1959, to prove its allegation.

The basis of the present appeal is that the only conclusion which the trial court could reasonably and logically draw from the circumstances of that sale was that the real estate was not assessed at its fair market value.

All the subordinate facts before the trial court were stipulated to by the parties. The court made a finding which contains only the stipulated facts, the court's conclusions and the plaintiff's claims of law. We have often held that a finding of subordinate facts is unnecessary when the court has not heard evidence. *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 64, 127 A.2d 48; *Sorensen* v. *Cox,* 132 Conn. 583, 587, 46 A.2d 125; *Dion* v. *Dion,* 128 Conn. 416, 417, 23 A.2d 314; Maltbie, Conn. App. Proc., p. 155. That rule has been applied in a case tried on an agreed statement of facts *(Gilman* v. *Joseloff,* 135 Conn. 595, 596, 67 A.2d 551), although the possibility of finding subordinate facts by inference from stipulated facts has also been recognized. *State* v. *Fico,* 147 Conn. 426, 427, 162 A.2d 697. The court should have ordered the stipulation made a part of the record *(Turner* v. *Connecticut Co.,* 91 Conn. 692, 696, 101 A. 88), and should have included in the finding only the court's conclusions and the claims of law. *Winchester Repeating Arms Co.* v. *Radcliffe,* 134 Conn. 164, 169, 56 A.2d 1. Since one procedural irregularity had the effect of offsetting the other, we consider the appeal on the record as presented.

The defendant assigns error in the factual conclusion of the court that "[t]he highest and best use of the property was for the existing hotel facilities." See Maltbie, Conn. App. Proc. § 176. There is no support in the agreed facts for this conclusion. Consequently it is stricken. The errors assigned by the

plaintiff attack the court's conclusions and its over-ruling of the plaintiff's claims of law. The primary conclusion has already been stated. Its component parts were that the plaintiff failed to offer evidence of comparable sales or of any of the other accepted means of arriving at the true, actual or market value of property, but relied on the price paid for the entire capital stock, although this price was not by itself evidence of the fair market value.

The plaintiff is a Connecticut corporation located in Branford. On October 1, 1959, it owned land in Branford on which were situated a number of frame buildings and their furnishings, operated as a resort hotel. The sixteen-room hotel building and five cottages and dormitories were over one hundred years old; three bungalows were over fifty years old; and five bungalows were over twenty years old. Nothing further as to the size, layout, sturdiness of construction, state of repair and the like appears to give any indication of the value of the buildings. Nothing is stated concerning the size of the tract of land and other elements bearing on its value. The buildings were assessed at $73,720 and the land at $35,890. A revaluation of real estate in the town had been made in 1953. The parties stipulated that the assessments of the property remained constant between then and 1959 and also that, during that period, the value of the property was determined by computing reproduction cost less depreciation. Nothing appears in the record as to either of these items. A resort hotel had been operated on the property for 119 years. From 1949 to 1959, the hotel showed an annual loss except for one year, 1951, when there was a small profit. After a study was made by an accounting and hotel analysis firm, it appeared financially wise to discontinue the hotel

business at the end of the 1959 summer season. Negotiations were undertaken to sell the property and, on October 29, 1959, another corporation purchased all of the plaintiff's capital stock for $65,000. The purchaser intended to use the land for six sites for homes. The plaintiff's assets at that time consisted solely of the real estate and furnishings. In November, 1959, the purchaser sold what had been the plaintiff's furnishings at auction for $7686.73, leaving the net purchase price of the plaintiff's land and buildings as $57,313.27. The appraised value of the land for assessment purposes was $53,835.

The parties tacitly assume that October 1 was the applicable taxing date (see General Statutes § 12-40), although this fact does not appear in either the stipulation or the finding. The assessors were required to value the property on that date *(Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 175, 4 A.2d 422) at its true and actual value, which is to be deemed to be its fair market value and not its value at a forced or auction sale. General Statutes § 12-63. The assessors were then required to set the property in the plaintiff's list at a uniform percentage of that value. § 12-64.

The plaintiff ignores the language of § 12-63 by treating the auction sale of the furnishings as establishing their true and actual value and then compounds the error by using the auction sale price in arriving at a value for the real estate. If the true and actual value of the personalty for tax purposes were in issue, that value could not, under the statute, be determined by the auction sale. It necessarily follows that the auction sale price is an unsafe guide in the determination of the true and actual value of the realty. The inaccuracy of the computation is further enhanced by reason of the

fact that the basis of it was the price received from the sale of the plaintiff's capital stock. In the absence of proof that the sale was not a forced sale, the plaintiff again runs counter to the mandate of § 12-63. Courts in other jurisdictions have had occasion to consider the proposition that the price received from the sale of the capital stock of a corporation taxpayer may be evidence of the value of its real estate. *People ex rel. Hotel Paramount Corporation* v. *Chambers,* 298 N.Y. 372, 375, 83 N.E.2d 839; *State Tax Commission* v. *Consumers' Heating Co.,* 207 Ore. 93, 117, 294 P.2d 887. We approve the rationale of those cases, which is that the probative value of the sale price of the stock for the purpose of determining the value of the real estate depends on the circumstances attending the particular sale. The facts of the present case indicate nothing more than a sale by a corporation in financial distress.

We said in *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 588, 153 A.2d 420, that "[f]ixing the value of real property for taxation purposes cannot be accomplished by any single method applicable in all situations. It is largely a question of fact for the trier, using such means as are suggested by the evidence, if those means in reason and logic appear to accomplish a just result and one consonant with the trier's own unbiased judgment." The property to be valued was that which stood in the plaintiff's name on October 1, regardless of its intended future use. It was the plaintiff's burden to satisfy the court that the assessors' valuation of the land and buildings was not the fair market value on that date. *Thaw* v. *Fairfield,* 132 Conn. 173, 179, 43 A.2d 65. "The expressions 'actual valuation,' 'actual value,' 'market

value,' 'market price' and, we add, 'fair value' are synonymous." *Sibley* v. *Middlefield,* 143 Conn. 100, 106, 120 A.2d 77. The plaintiff furnished none of the usual means for arriving at a valuation of property. See cases such as *Connecticut Savings Bank* v. *New Haven,* 131 Conn. 575, 582, 41 A.2d 765; *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 230, 188 A. 433; *Campbell* v. *New Haven,* 101 Conn. 173, 184, 125 A. 650; *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 A. 91. On the facts presented, the court was fully justified in concluding that the plaintiff had not established that the valuation placed on its real estate by the assessors was not the fair market value on the assessment date.

There is no error.

In this opinion the other judges concurred.