[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this proceeding originally appealed from the action of the Andover board of tax review (the Board) approving the assessor's valuations of the plaintiff's property on the list of October 1, 1991. The plaintiff later amended the original appeal by adding a count making the appeal apply also to the valuations on the list of October 1, 1992, and still later added two additional counts making the appeal apply also to the valuations on the list of October 1, 1993, and the list of October 1, 1994. The assessor's valuations on the 1992 list are the valuations made in the decennial revaluation of 1992; the valuations on the 1993 list and 1994 list are the same as those on the 1992 list; and neither party claims that "unusual circumstances" (84 Century Ltd. Partnership v. Board of Tax Review,207 Conn. 250, 251, 541 A.2d 478 (1988)) exist that would warrant interim revaluations of the 1993 or 1994 list. Accordingly, the court will consider the 1992, 1993, and 1994 lists together, and the decision of the court on the 1992 list will apply to those three lists.
The plaintiff's original appeal is dated April 6, 1992. In that appeal, the plaintiff claims that the valuations that the assessor and the Board placed on its property for purposes of taxation by Andover (Andover's valuations) violate General Statutes sec. 12-64. That statute provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and actual valuation." The plaintiff claims that Andover's valuations grossly exceed the "present true and actual valuation" of its property. By the provisions of General Statutes sec. 12-63, the words "present true and actual valuation" mean "fair market value" and "not . . . value at a forced or auction sale." "The expressions `actual valuation,' `actual value,' `market value,' `market price' and, we add, `fair value' are synonymous." Sibley v.Middlefield, 143 Conn. 100, 106, 120 A.2d 77 (1956). As required by General Statutes sec. 12-62a (b), for purposes of local taxation Andover has assessed property liable to taxation "at a uniform rate of seventy percent of present true and actual value, as determine under section 12-63."
I CT Page 12128
The original appeal relates to Andover's 1991 seventy percent (70%) assessment ($169,005) for the plaintiff's property, described in that appeal as "Open Space" and "Other Land." When the second count was added, both counts of the amended complaint then described the property as "Land" and "Other Land," and the second count added an appeal from Andover's 1992 decennial-revaluation seventy percent (70%) assessment ($287,650) [5?] for that property. When the third count was added, that count referred to the assessment of $287,650 and stated "$48,250.00 allocated to the land and $239,400.00 allocated to the improvement." The parties are agreed that the value of the "Land" is not in issue; in issue rather, is the value of "the improvement," which consists of Andover Lake Dam (the dam) and the land 1.19 acres that is the site of the dam.
The dam maintains or otherwise controls water levels in the 150-acre Andover Lake, which is used for recreational purposes. Between 1989 and 1991, the dam was extensively reconstructed to comply with an order of the Department of Environmental Protection (D.E.P.) The D.E.P. issued a permit for the work on October 5, 1989, and a Certificate of Approval on April 15, 1991.
The plaintiff's appeal has been referred to me, as a state trial referee for a hearing and entry of judgment. In the course of the hearing the court heard testimony and received in evidence appraisal reports from an appraiser for the plaintiff and an appraiser for the defendant The court also had the benefit of viewing the premises and of briefs filed by the parties.
 II
Both appraisers agreed, in substance, that the highest and best use of the dam is its present use, and, also in substance, that the best method for determining the value of the dam for purposes of taxation is the Cost Approach i.e. replacement or reproduction cost less depreciation. Even if unique-use property has no income or conventional market, "the law still commands that all property liable to taxation shall be put in the owner's list at its present true and actual valuation. . ." (Internal quotation marks omitted.) New Havenwater Co v. Board of Tax Review, 166 Conn. 232, 236, 348 A.2d 641
(1974). In that case, our Supreme Court approved the Cost Approach for valuing, for purposes of taxation unique-use property that, like the dam cannot be adequately valued by reference to market sales or capitalization of income.
As reconstructed, the dam is about 550 feet in length, including CT Page 12129 an abutment wall of 378 feet, a primary spillway of 64 feet and an auxiliary spillway of 109 feet. At its center line, the maximum height of the dam is about 18 feet. The base of the dam is composed of earth and stone and the two-foot wide dam wall of concrete. The reconstructed dam uses as a base the original dam, which was an earth embankment structure with a concrete wall along most of its crest. The original earth embankment was about 454 feet long and 20 feet high.
The plaintiff's appraiser estimated the cost to replace the dam to be $320,217. His report, at pages 12 and 13 of Exhibit A, has a depreciation deduction of $96,065 with an explanatory note ("The current dam was constructed on the base of the older dam"). The report does not refer, however, to the "contributory value" of those parts of the original dam incorporated into the reconstructed dam. His report notes also that the $320,217 does not include the value of the 1.19 acres site of the dam. The plaintiff's appraiser values the 1.19 acres at $3,000, and the court concurs in that valuation. The court finds untenable, however, the claim of the plaintiff's appraiser that this dam, finished in 1991, had already depreciated in value thirty percent of its estimated cost by October 1, 1992.
The defendant's appraiser estimated the cost to replace the dam to be $300,000. He estimated the "contributory value" of the original dam at $45,000. The court is of the opinion, and finds, that $45,000 is a reasonable valuation of the "contributory value." The court further finds that the "contributory value" of the original dam should be included in the value of the dam as reconstructed. The defendant's appraiser does not include in the $300,000 the value of either the 1.19 acres ($3,000) or the "contributory value" ($45,000) of the original structure. If these latter two items are added to the $300,000, the total of the appraisal of the defendant's appraiser would be $348,000. The court is of the opinion, and finds, that as of October 1, 1991, and October 1, 1992, on the Cost Approach basis the before-depreciation value of the dam and its site is $348,000.
With respect to physical depreciation, the court finds that the reconstructed dam has a useful-life expectancy of 100 years, and that physical depreciation should be deducted at the rate of one-half of one percent (0.5%) for the 1990-1991 assessment year (the reconstruction not having been completed until 1991) and at the rate of one percent (1%) for the 1991-1992 assessment year. Accordingly, the court finds that on October 1, 1991, after deducting physical depreciation of $1,740, the value of the dam and site is $346,260, and that on October 1, 1992, after deducting further physical CT Page 12130 depreciation, of $3,480 the value of the dam and site is $342,780.
With respect to functional depreciation, the Connecticut Supreme Court said, in Moss v. New Haven Redevelopment Agency, 146 Conn. 421,426, 151 A.2d 693 (1959), "It has come to be recognized that, in addition to depreciation in the form of structural depreciation resulting from wear and tear and other sources of physical deterioration, the element of depreciation usually referred to as functional depreciation frequently affects value because of obsolescence of the property or its loss of adaptability. . . Such an element of depreciation results from a change of neighborhood or from other extrinsic factors having a direct bearing on the value of the property. We have approved its use." Although the plaintiff claims that a depreciation deduction should be made for functional depreciation, including obsolescence, no credible evidence was introduced in support of those claims, and this court finds that no depreciation deduction for functional depreciation is warranted.
 III
Our Supreme Court has said that the "process of estimating the value of property for taxation is, at best, one of approximation and judgment, and there is a margin for a difference of opinion." BurrittMutual Savings Bank v. New Britain, 146 Conn. 669, 675, 154 A.2d 608
(1959). That court also said in Stamford Apartments Co. v. Stamford,203 Conn. 586, 589, 525 A.2d 1319 (1987), "[W]hen a property owner challenges the assessor's valuation, `the plaintiffs' burden . . . is a difficult one. [P]roper deference must be given to the judgment and experience of assessors. Connecticut Coke Co. v. New Haven, 169 Conn. 663,668, 364 A.2d 178 (1975). The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes.'" (Emphasis in original.) (Internal quotation marks omitted.) The property owner has "the burden to establish that the defendant's valuation was excessive." Stamford Apartments at 590. "The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations." Thaw v.Fairfield, 132 Conn. 173, 179, 43 A.2d 79 (1945).
As noted previously, this court finds, on the basis of the Cost Approach, that the value of the dam and site on October 1, 1991, is $346,260 and, on October 1, 1992, is $342,780. This court further finds that those values exceed the assessor's valuations of $172,500 CT Page 12131 and $342,000 respectively. This court further finds that the reconstruction of the dam constitutes "exceptional circumstances" (Pauker v. Roig) 232 Conn. 335, 343, 654 A.2d 1233 (1995)) that warrant an interim revaluation in 1991 of the 1982 list, under General Statutes sec. 12-55.
This court further finds that the plaintiff has not sustained the burden of proving that the assessor's valuations substantially overvalued the plaintiff's property on the list of October 1, 1991, or October 1, 1992.
 IV
In its brief, the defendant requests that this court award the defendant an appraisal fee of $3,250 under the provisions of General Statutes sec. 12-118 and sec. 52-260 (f). The relevant portion of the former statute provides that upon appeals from the board of tax review "costs may be taxed at the discretion of the court." The relevant portion of the latter statute provides that when a real estate appraiser is "summoned" to give expert testimony, the court shall determine a reasonable fee to be paid to the appraiser, to be taxed as costs in lieu of other witness fees.
In our statutes, the verb "summon" does not mean to ask or request to attend or appear, but to command to attend or appear, usually at a legislative or judicial proceeding. More than a hundred years ago, our Supreme Court recognized the duty of citizens to testify "when legally required to do so." In re Clayton, 59 Conn. 510,521, 21 A. 1005 (1890). The procedure for "summoning" a witness is usually to serve him with a subpoena or a capias. See General Statutes, sec. 52-155 (b).("Any person summoned as a witness" refers to witness whose appearance has been compelled by a subpoena or capias.) See also General Statutes sec. 2-46 (power in legislature to compel attendance of witnesses by subpoena or capias and to punish any non-appearing person "summoned as a witness"); sec. 54-82i
("summons" means a subpoena, order, or other notice requiring the appearance of a witness); sec. 52-143 (subpoena shall be served not less than eighteen hours prior to time designated "for the person summoned to appear"; any subpoena "summoning a police officer as a witness"; subpoenas for witnesses "summoned by the state"; if any person summoned by the state . . . by a subpoena"). That the verb "summon" has acquired "a peculiar and appropriate meaning in the law" (General Statutes sec. 1-1) is evidenced by one of the definitions of "summon" in Webster's New International Dictionary, Second Edition: "Law. To command by service of a summons or CT Page 12132 equivalent statutory notice to appear in court."
The file in this case contains no evidence that the defendant's appraiser was "summoned" within the meaning of that word in General Statutes sec. 52-260 (f). Although a court of equity has broad power with respect to costs, this court is of the opinion that that power should be exercised with a view to the maxim of equity that "equity follows the law." In recognition of that maxim, "Equity courts cannot disregard, or in effect repeal, statutory and constitutional requirements and provisions." 27 Am.Jur.2d 630. To award the requested appraisal fee on the state of the current record in this case would be to ignore the word "summoned" in General Statutes sec.52-260 (f) and to repeal the provision in that statute that the appraiser be "summoned" as a condition precedent to the award. The defendant's request for an award of a fee for its appraiser is denied.
 V
The plaintiff not having sustained its burden of proving that the assessor's valuations substantially overvalued the plaintiff's property, judgment may enter for the defendant on all four counts.
Rubinow State Trial Referee