## JOSEPH R. PEPE, TRUSTEE *v.* BOARD OF TAX REVIEW OF THE TOWN OF WOODBURY

## JOSEPH R. PEPE, TRUSTEE *v.* BOARD OF TAX REVIEW OF THE TOWN OF WOODBURY

## HILLARD N. EINBINDER ET AL. *v.* BOARD OF TAX REVIEW OF THE TOWN OF WOODBURY

| SUPERIOR COURT | JUDICIAL DISTRICT OF WATERBURY | FILE NOS. 69105 72109 90673 |
| --- | --- | --- |

Memorandum filed April 11, 1990

*Robert E. Wright,* for the plaintiff in the first and second cases.

*Perelmutter & Potash,* for the plaintiffs in the third case.

*Carmody & Torrance,* for the defendant.

BYRNE, J. These cases are appeals, pursuant to General Statutes § 12-118, from an assessment of a private road in Woodbury for the grand list years 1983 through

1989. In order to place the present appeals in proper perspective, a review of the procedural history is in order.

In the early 1970s, Joseph R. Pepe, trustee, commenced the development of a condominium complex in Woodbury, which ultimately contained 400 units. These units were subsequently sold to other individuals. Pepe, however, retained ownership to Woodlake Road and to some sixty-three acres of property adjacent to Woodlake Road. Woodlake Road is 6424 feet long and fifty feet wide and consists of 7.505 acres. Woodlake Road is the only means of access to the condominium complex from Transylvania Road, the nearest public highway.

At a later date, an easement was granted to the condominium association (association), and its members were given a right of ingress and egress over Woodlake Road. It became the responsibility of the association, however, to maintain and to repair the road. The association became responsible to maintain all utilities (electricity, water and sewers) located in Woodlake Road. This easement was created in 1972. For varied reasons, Woodlake Road has never been accepted by the town of Woodbury. At all times mentioned here, it has been privately owned and considered to be a private roadway.

Subsequently, the town of Woodbury instituted litigation against Pepe to collect the delinquent taxes on the property. In *Woodbury* v. *Pepe*, 6 Conn. App. 330, 505 A.2d 723 (1986), the Appellate Court concluded that Woodlake Road was subject to assessment as private property and that the town of Woodbury was entitled to the property taxes for the tax years 1975 through 1982.

In 1983, the Woodbury board of tax review (board) reassessed Woodlake Road and placed the fair market

value of the property at $580,000 for the grand lists of October 1, 1983, through October 1, 1985. Thereafter, the board established the assessment value of the property at $406,000, or 70 percent of its fair market value.

Pepe appealed the aforementioned assessments for the years October 1, 1983, through October 1, 1985, to the Superior Court. In *Pepe v. Board of Tax Review,* Docket Nos. CV84-69105S and CV85-72109, the court, *Ripley, J.,* upheld the board's assessments and dismissed the appeals. Thereafter, that decision was appealed to the Appellate Court. In *Pepe v. Board of Tax Review,* 14 Conn. App. 705, 542 A.2d 756 (1988), the Appellate Court concluded that the trial court relied on inconsistent facts and improper accounting principles in reaching its decision and remanded the case for a new trial to determine the valuation of the roadway. By this circuitous route, the present proceeding, as it applies to the assessments for the years 1983 through 1985, has been reached.

Subsequent to the remand of the matter from the Appellate Court, the complaint was amended so as to include the assessments for 1986 and 1987. In the interim, Hillard N. Einbinder and Moshe M. Schweky (owners) acquired title to Woodlake Road and to the sixty-three acres adjoining it. The pleadings were amended to substitute the owners as parties plaintiff.

Thereafter, the owners instituted another tax appeal, *Einbinder v. Board of Tax Review,* Docket No. CV89-90673S. This appeal is the third case involved in the present proceeding and contests the assessments for the years 1988 and 1989.

During the course of the trial, the parties stipulated that for the years 1983 through 1987, the board had determined the fair market value of the property to be $341,100, with an assessed value of $238,770, or 70 per-

cent of its fair market value. As to 1988 and 1989, the parties stipulated that the board had determined the fair market value of the property to be $889,242, with an assessed value of $622,470, or 70 percent of its fair market value.

Several real estate experts testified on behalf of the parties. Philip W. Ball testified on behalf of the owners while Daniel K. Thomas and Arthur P. Oles testified on behalf of the board. All of them agreed that the highest and best use for the property was as a roadway and that the road should be revitalized so that it would be accepted as a public road by the town of Woodbury.

Ball came to the conclusion that the road had nominal value at best in that there was no other reasonable use for the property but as a road. The property cannot be developed in accordance with the present zoning regulations in that the regulations require an open space residential use with thirty foot minimum side yard requirements. With the right of way restrictions, nothing can be done with the property other than using it as a roadway. Ball concluded that the three ordinary means used to determine value were (1) the comparable sales approach, (2) the income approach, and (3) the reproduction cost approach. It was his opinion that none of those methods would apply to this case.

Ball could not find any comparable sales of roadways except one, in Madison, where the selling price was $6000, for a roadway one thousand feet long. Ball found two other private roadways in Woodbury, and there was no separate assessment for these roadways. It was his opinion that roadways add value to the properties served.

As to the other methods of valuation, the road produced no income and, therefore, the income method could not be used. The replacement cost method could

not be used because it would cost the owners $889,000 to reproduce the road while the value of their adjoining sixty-three acres is $419,000. The owners would not rebuild the road if it were destroyed. This opinion would apply to any property the owners had in Woodbury and to the use of Woodlake Road to get to the Southbury property. Ball concluded that the board's use of the replacement cost approach was not proper in the present case.

Ball concluded that the land under the roadway had a nominal value that he placed as follows: as to the grand lists of 1983 through 1987, inclusive, the 100 percent valuation of Woodlake Road was $15,000 ($2000 per acre × 7.5 acres), and the 70 percent assessment was $10,500; as to the grand lists of 1988 and 1989, the 100 percent valuation was $60,000 ($8000 per acre × 7.5 acres), and the 70 percent assessment was $42,000. During the period 1983 through 1989, the nominal value of an acre of land has increased from $2000 to $8000.

Both experts called on behalf of the board based their opinions of value and assessment on the replacement cost basis in that the other recognized valuation approaches did not apply. Thomas was project supervisor for the corporation that performed Woodbury's decennial revaluation, which became effective with the grand list of October 1, 1988. He concluded that the 100 percent valuation of the roadway was $889,240, and that the 70 percent assessment was $622,440. Thomas valued the land outside the road at $13,500 per acre, with 4.4 acres involved for a total value of $59,400. Thereafter, he reduced the sum by 90 percent so that the 100 percent valuation of this property was $5940, and the 70 percent valuation was $4160. The 90 percent depreciation factor was taken from the Marshall Valuation Catalog, a recognized reference manual used in revaluation.

The same catalog stated that the cost to replace a road similar to Woodlake Road would be between $185 to $220 per lineal foot. It should be noted that these figures apply to a forty foot wide road, while Woodlake Road is twenty-four feet wide on the average. Due to the hillside topography of the area, a 1.25 cost factor would be added to the estimated lineal foot estimate. To that total cost, a 50 percent depreciation factor would be used to consider the deterioration to the road.[1]

Thomas could not find any comparable sales so that a comparable sales approach might be used. He could not use the income approach in that the property did not produce any income.

Oles rendered an opinion on the value of the property for the grand lists of 1983 through 1989. As to the grand lists of 1983 through 1987 inclusive, the 100 percent valuation of Woodlake Road was $341,100, and the 70 percent assessment was $238,770.

In reaching this conclusion, Oles determined that the value of the 7.505 acres was $3000 per acre for a total market value of $22,500. Also using the Marshall Valuation Catalog, he concluded that the cost to replace the

---

[1] The following is the mathematical computation used by Thomas in reaching his conclusion:

| "$ | 220 | cost per lineal foot of road |
|---|---|---|
| | 6,424 | total lineal feet of road |
| $1,413,280 | | |
| | 1.25 | Factor for hillside condition |
| $1,766,600 | | |
| | 50% | depreciation factor |
| $ 883,300 | | 100% valuation |
| | 70% | |
| $ 618,310 | | 70% valuation |

RECAPITULATION

| $ 4,160: | 70% assessment outside roadway |
|---|---|
| 618,310: | 70% assessment roadway |
| $622,470 | 70% total assessment" |

roadway would be $152 per lineal foot for a forty foot wide road. Oles reduced the lineal foot cost to $91.20 per lineal foot because the paved portion of Woodlake Road is twenty-four feet wide. It should be noted that he used 6302.2 instead of 6420 feet. Oles also used a cost index factor to reduce the lineal foot cost to $80.61 per foot. Thus, the reproduction cost amounted to $508,000. Then, a depreciation factor was computed, amounting to $189,350. The depreciated value of the roadway was thus established at $318,600. Then, the land value of $22,500 was added for a total fair market value of $341,100; the 70 percent assessment was $238,770.

As to the grand lists of 1988 and 1989, Oles concluded the 100 percent value of the roadway was $478,500, and the 70 percent assessment was $334,950. In reaching this conclusion, he determined that the value of the 7.505 acres was $15,000 per acre for a total market value of approximately $112,600. Using the Marshall Valuation Catalog, he estimated that the cost to replace the roadway would be $161.20 per lineal foot for a forty foot wide road. Oles then reduced the lineal foot cost to $96.72 per lineal foot. Then he factored in a cost index factor to reduce the lineal foot cost to $95.52 per lineal foot. Thus, the reproduction cost amounted to $602,000. A depreciation factor was computed amounting to $236,109. The depreciated value of the roadway was thus established at $365,900. The land value of $112,600 was then added for a total fair market value of $478,500; the 70 percent assessment was $334,950.

The owners paid $425,000, for approximately seventeen acres of land in Southbury, the property in question and the sixty-three acres adjacent to Woodlake Road. Of this sum, $208,000, was paid to the town of Woodbury for back taxes.

The owners know that they cannot develop the sixty-three acres until Woodlake Road is accepted by the town of Woodbury. At the time of the purchase, the owners knew that the road was not an accepted road because of deficiencies in the subbase. The condominium association owns and maintains the utilities under the road and has the responsibility to repair, to maintain and to rebuild the road. If the road were destroyed, the owners would not replace or repair the road. They claimed that they had no legal responsibility to do this and that it would be too costly in relation to their initial investment to repair the roadway.

With this factual scenario in mind, a resolution of the town assessor's responsibilities pursuant to General Statutes § 12-64 to value and to assess all privately held real estate within a town and to determine the value and assessment to be placed on a property over which there is an easement in favor of another to use the property for a roadway is what is called for in the present case.

"When an easement is carved out of one property for the benefit of another the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement; the respective tenements should therefor be assessed accordingly. *(People ex rel. Poor* v. *Wells,* 139 App. Div. 83, 87; affd. on opinion below, 200 N.Y. 518. See *Blenis* v. *Utica Knitting Co.,* 73 Misc. Rep. 61; affd., 149 App. Div. 936; affd., 210 N.Y. 561; *Smith* v. *Mayor, etc., of N.Y.* 68 N.Y. 552, 557; *People ex rel. Topping* v. *Purdy,* 143 App. Div. 389; affd., 202 N.Y. 550; *Matter of Hall,* 116 App. Div. 729; affd., 189 N.Y. 552)." *Tax Lien Co.* v. *Schultze,* 213 N.Y. 9, 11–12, 106 N.E. 751 (1914).

"[E]asements are in themselves real property for purposes of taxation, it follows that since they could then

exist only in connection with some dominant estate, they are part thereof, adding perhaps some value to the latter, and are to be assessed in connection therewith, if at all, and not separately. We held in *Norwalk* v. *New Canaan,* 85 Conn. 119, 127, 81 Atl. 1027 [1911], that 'easements such as rights of way and the right to conduct water by pipes from or across the lands of another, are not estates in land but mere rights, incorporeal hereditaments. . . . Such mere incorporeal rights are not ordinarily separately assessed.' " *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 396, 126 A. 1 (1924).

"The law is settled that the obligation of the owner of the servient estate, as regards an easement, is not to maintain it, but to refrain from doing or suffering something to be done which results in an impairment of it. 2 Thompson, Real Property (Perm. Ed.) § 675." *Carrig* v. *Andrews,* 127 Conn. 403, 407–408, 17 A.2d 520 (1941). If the interest created by a validly recorded easement leaves the grantor with nothing more than the naked legal title to the land, the practical effect of the conveyance is to leave the grantor with nothing of value. *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 220, 332 A.2d 83 (1973).

In the present situation, the owners cannot use any portion of Woodlake Road for any other purpose. The easement totally eliminates any other use to which this property might be put. The owners have no obligation to maintain or to repair the road. There is no doubt that the value of the condominiums was substantially increased by the easement, because without the roadway there would be no access to the units. This reasoning would also apply to the owners' property abutting Woodlake Road. Without access, these properties, for all intents and purposes, would be valueless. The only

conclusion that can be reached is that the land over which Woodlake Road runs has a nominal value at best to the owners.

Because of the protracted history of this case, a discussion of the issues raised in the remand of *Pepe* v. *Board of Tax Review,* supra, 14 Conn. App. 705, will be undertaken.

"There are three accepted methods of valuation which may be used for the assessment of real property. They are the comparable sales approach, the income approach or the reproductive cost or cost approach." *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 427–28, 494 A.2d 624 (1985). All the appraisers used the comparable sales approach in determining the value of the property beneath the roadway. The owners' appraiser claimed that this was the only value that Woodlake Road had to the owner. The board's appraisers, however, opined that the replacement cost of the improvements to the roadway had to be added to the value of the real estate. " 'The general rule . . . is that the proper measure of damages is not the market value of the land plus the reproduction cost of the improvements, but the market value of the property as improved, in view of all the uses to which it is adaptable and available. . . . [A] structure or improvement may add little or nothing to the value unless it is of such a character that it is adapted to some prospective use which affects the market value of the land.' *People* v. *Ocean Shore R., Inc.,* 32 Cal. 2d 406, 427–28, 196 P.2d 570 [1948]; 27 Am. Jur. 2d, Eminent Domain, § 291." *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 414, 270 A.2d 549 (1970). "Replacement cost less depreciation (plus an allowance for delay when warranted) is deemed an acceptable measure of value 'when the appraiser is justified in concluding that, were the property in question to be destroyed or lost, an

owner would rationally replace it.' " *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 239, 348 A.2d 641 (1974).

The only conclusion that can be reached is that the owners would not replace the roadway if it were destroyed. There would be no reason for them to do this in that it is the responsibility of the association to maintain and to repair the road. It would be mandatory for the association to replace the road in that it has an immense financial interest to protect. The owners' adjacent property is undeveloped, so that their economic interest is much less than that of the association, and for the owners to replace the roadway would defy logic and good economic and business judgment. Thus, the appraisers' use of a replacement or reproduction cost approach to valuation was misplaced.

Additionally, the reproduction cost approach to valuation of property is used where there is no readily available market for the subject property and more particularly for special use property. Id., 236 (water main, hydrant connections, meters and service connections); *Connecticut Light & Power Co.* v. *Monroe,* 149 Conn. 450, 181 A.2d 118 (1962) (hydroelectric plant); *Sible* v. *Middlefield,* 143 Conn. 100, 120 A.2d 77 (1956) (summer recreational center); *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 122 A. 91 (1927) (large factory complex including equipment and machinery). In all these cases, the assessed property had a particular purpose independent of any other property and the assessment difficulty arose out of an inability to compare the use to any other property. The particular use was not connected to or subservient to any other adjacent land use. Also, the properties were subject logically to being replaced if destroyed. It defies logic to apply the concept of reproduction cost to the present property in that its only purpose is to serve adjacent

property; it cannot be used for any other purpose; its value inures to the adjacent property it serves.

Reproduction cost assumes that a property would be totally destroyed and that the owner would be reasonably expected to replace it. It defies comprehension that one could even think in terms of a 6424 foot road being totally destroyed. In prior decisions, one could reasonably consider replacing a building or a dam that possibly could be destroyed. The law and the interpretation of the law should lead to reasonable and logical conclusions. To use the reproduction cost approach to assess the property is not a reasonable and logical approach because it produces a bizarre result in this particular case.

Ordinarily, at this point in an opinion, the concluding remarks would be set forth. Due to the legal history of this dispute, however, the court feels that alternative conclusions should be discussed. The sole reason for this approach is that if another authority finds the court's reasoning not founded in the evidence, that authority can insert the valuation as found in the alternative. If the reproduction cost approach is found to be a valid approach, and the owners would reasonably be expected to replace the road, and the value of the servient estate was not destroyed by the easement to the dominant estate, and the values of the condominiums and the adjacent property were not increased by the benefit of easement over Woodlake Road, then the following valuation and assessments would be in order. For 1983 through 1987, the 100 percent valuation is $341,100, and the 70 percent assessment is $238,770. For the years 1988 and 1989, the 100 percent valuation is $478,500, and the 70 percent assessment is $334,950.

The only reasonable and logical conclusions, however, are: (1) the reproduction cost approach is not a valid

method to assess the subject property; (2) the owners would not reasonably be expected to replace the roadway if it were destroyed; (3) the value of the servient estate was destroyed by the easement to the dominant estate; and (4) the values of the condominiums and the adjacent land were increased by the benefit of the easement over Woodlake Road. The only value that the subject property has is the value of the 7.5 acres of land adjacent to the underlying road.

The method of appraisal of the property has been unreasonable and discriminatory and has resulted in a substantial overvaluation. For each of the grand lists for 1983 through 1987, therefore, the 100 percent valuation shall be reduced to $15,000, and the 70 percent assessment shall be reduced to $10,500. For the 1988 and 1989 grand lists, the 100 percent valuation shall be reduced to $60,000, and the 70 percent assessment shall be reduced to $42,000.

Accordingly, the plaintiffs' appeal is sustained and judgment may enter for the plaintiffs in all cases. Costs are assessed.