[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal under section 7-250 of the General Statutes from the assessment by the named defendant of sewer benefit assessments against the property of the plaintiff under section 7-249 of the General Statutes. The defendants in the appeal include the Water Pollution Control Authority of the Town of Orange (WPCA), a successor to the Orange Sewer Commission, its chairman, the Town of Orange and the town clerk. The defendants other than the WPCA are unnecessary.
The exclusive method for challenging sewer benefit assessments is by an appeal under section 7-250 C.G.S. Vaill v. Sewer Commission, 168 Conn. 514, 519; Zizka v. Water Pollution Control Authority, 195 Conn. 682, 690. The plaintiff filed its fourth revised complaint on January 14, 1991, two days before commencement of the trial. It was allowed but limited to additional claims within the proper scope of an administrative appeal. It is clear that a request for a declaratory judgment, an injunction or other relief cannot be added to an administrative appeal. Fisher v. Board of Zoning Appeals, 142 Conn. 275, 277; Willard v. West Hartford, 135 Conn. 303, 305. In an administrative appeal the appellant is limited to challenging the agency's action only to the extent that it affects the appellant's property, and cannot make general claims affecting the rights of other property owners or the town as a whole. This includes the challenge to the agency's regulations or standards in general, which requires an independent proceeding such as a declaratory judgment. Bierman v. Planning and Zoning Commission, 185 Conn. 135, 139. In order CT Page 968 to make a general challenge to the assessment procedure such as by a declaratory judgment, other interested persons, which would include all other affected property owners, must be made parties to the appeal or be given reasonable notice of the action. Section 390(d) Connecticut Practice Book. Where a request is made in the appeal, other than to sustain it and grant appropriate relief to the appellants, the additional requests should be ignored or denied. Rosnick v. Zoning Commission, 172 Conn. 306, 308. Accordingly, this case is treated exclusively as an appeal under section 7-250 of the General Statutes and not some other form of legal action.
A plaintiff in a civil action or an appellant in an administrative appeal are limited to the allegations in the complaint or appeal. Matthews v. F.M.C. Corporation,190 Conn. 700, 705; Seery v. Yale New Haven Hospital, 17 Conn. App. 532,542. The plaintiff cannot recover based on issues not clearly raised by the amended appeal. Vinchiarello v. Kathuria, 18 Conn. App. 377, 383, 384. The amended appeal contains numerous issues which will be considered, to the extent that they are within the scope of a permissible appeal under section 7-250 of the General Statutes. The plaintiff's claims, and the relevant paragraphs of the appeal are as follows:
 (1) The assessment of benefits exceeds the special benefit to the subject property. (Paragraph 4).
 (2) The assessment violates section 7-249 in apportionment of sewer assessments on all properties in that other benefited properties are assessed at only 30 percent of their special benefit. (Paragraph 4).
 (3) The assessment of property is based on erroneous assumptions, and failed to consider the unique circumstances of the subject property. (Paragraph 5).
 (4) The assessment is a violation of equal protection since it excessively apportions the cost of sewer construction to undeveloped rather than developed land. (Paragraph 6).
 (5) The agency improperly delegated its authority to an appraisal firm. (Paragraph 8).
 (6) The defendant improperly placed low assessments on other properties, thereby CT Page 969 shifting assessments to the subject property and undeveloped properties in general. (Paragraph 10).
 (7) The defendant failed to refer its proposal to locate or extend the sewerage system to the Orange Plan and Zoning Commission for a report as required under section 8-24 of the General Statutes. (Paragraph 11).
The plaintiffs dropped a claim in paragraph 5 at the trial that the public hearing on the assessments was a denial of due process.
In order to evaluate the plaintiff's claims, the plaintiff's property, the assessment procedure employed by the WPCA and the requirements of section 7-249 must be considered. Northeast Enterprises is a partnership with five partners. It owns 17.02 acres comprised of 16.76 acres in the Town of Orange and 0.26 acres in the adjacent City of West Haven. The property can be described as a flag lot, with 50 feet of frontage on Marsh Hill Road. The main portion of the lot is rectangular in shape, with its easterly boundary in West Haven near the Oyster River. The property slopes from west to east and there is a drop of 50 feet from the westerly to the easterly boundary. The land in Orange is in a light industrial #2 zone (LI2). Permitted uses in that zone include manufacturing, research laboratories, office buildings for business and professional establishments, freight and materials trucking businesses (accessory to other permitted uses on the same lot) and other less significant uses. Section 26.1, Orange Zoning Regulations (Exhibit A). The lot meets the minimum frontage requirement for the zone of 50 feet, and there is a setback requirement for buildings of 35 feet. Sections 26.2 and 26.4, Orange Zoning Regulations. The maximum floor area (FAR) is 70 percent, and the maximum ground coverage is 40 percent of the lot if the lot contains over 15 acres. Section 26.5, Orange Zoning Regulations. While the lot contains over 15 acres and more than 700,000 square feet, the present buildings on the property used as a trucking terminal, comprise about 20,000 square feet. The subject property can be considered a rear lot, but is located on the southeasterly side of Frontage Road and the easterly side of Marsh Hill Road, a short distance from the Connecticut Turnpike (I-95). Surrounding properties are also in the LI2 zone and are used for office building and warehousing, among other uses. The present use of the subject property as a trucking terminal is a nonconforming use since there is no existing principal permitted use on it. CT Page 970
The Town Meeting of Orange, its legislative body, authorized construction of a sewerage system in certain areas of Orange, including the vicinity of the subject property and appropriated construction funds for it, in 1985. In 1986 a sewer easement was obtained by condemnation along the southerly boundary of the plaintiff's property. In accordance with section 7-257 of the General Statutes the subject property is presently connected with the sewer, which was completed in 1988. The WPCA then levied sewer benefit assessments under section 7-249 of the General Statutes on properties having access to the sewer. A notice of public hearing (Exhibit F) was prepared by the WPCA and sent to owners of all properties on which it proposed to levy benefit assessments. A public hearing was held on February 22, 1989. The WPCA had previously retained a real estate appraisal firm to appraise all of the properties benefited by the sewer and to propose benefit assessments. The summaries of its reports and evaluations were available at the Town Clerk's office and at the public hearing. The evaluation study contained an opinion as to the market values of all benefited properties before and after installation of the sewers and the estimated enhancement in value for each parcel. The WPCA levied benefit assessments on all properties at a rate of 30 percent of the enhancement value as determined by the appraisal report after adjustments made following the public hearing. The benefit to Northeast's property was determined at $1,629,000 and the 30 percent assessment was $488,700. Notice of sewer assessments were sent to the owners of all benefited properties after the public hearing pursuant to section 7-250 of the General Statutes. The notice stated that the sewer assessments were levied effective March 14, 1989 and that appeals from the assessments could be taken within 21 days thereafter to the Superior Court. The record shows that the WPCA complied with the procedural requirements of section 7-250 of the General Statutes.
Section 7-249 authorizes the WPCA to levy sewer benefit assessments upon lands and buildings in the municipality which are specially benefited by the sewerage system whether or not they abut on it. The statute contains the factors used by the WPCA in assessing benefits and apportioning them among benefited properties. The factors include the area of the property, its frontage, grand list valuation and present or permitted use or classification, and any other relevant factors. Section 7-249 C.G.S. The statute allows assessments only on land and buildings benefited by the sewerage system, so benefits must be special to the property owner, as distinguished from benefits to the general public. CT Page 971 Windham Heights Associates v. Windham, 179 Conn. 229, 231,232. The special benefit assessment must be based on the increase in value of the property due to the improvement. Vaill v. Sewer Commission, supra, 518. If the assessment is greater in amount than the particular benefit conferred upon the particular property, the assessment would be unconstitutional as a taking without full compensation. Anderson v. Litchfield, 4 Conn. App. 24, 29. The monetary value of the benefit to the property owner is the difference in fair market value of the real property with and without the sewer system, even though the cost of the system cannot be fully recouped by the town. Bridge Street Associates v. Water Pollution Control Authority, 15 Conn. App. 140, 144; Anderson v. Litchfield, supra, 29; Johnson v. Sewer Authority, 21 Conn. App. 814. The question is the amount of the particular benefit conferred upon the subject property as a result of the sewer. Cyr v. Coventry, 216 Conn. 436, 442; Tower Business Park Associates No. 1 Ltd. Partnership v. Water Pollution Control Authority, 213 Conn. 112, 117; Katz v. West Hartford, 191 Conn. 594, 602, 603. The requirement that the benefits assessed be "special to the individual property owner" does not require that the property owner be the sole beneficiary of the public improvement. Cyr v. Coventry, supra, 442.
1. Percentage of Assessment
The plaintiff claims that the assessment violates section 7-249 because the percentage of the assessment against the subject property, when compared with the amount to be raised by all the sewer assessments against properties benefited by the sewer, exceeds 30 percent of the special benefit to the subject property. While the claim could be more artfully framed in the appeal, it amounts to a contention that the cost of the sewer was unfairly shifted to the plaintiff and that it pays in excess of 30 percent of its special benefit. To the extent that this is a garden variety overassessment claim, it will be dealt with under that issue. The claim otherwise has no merit. It is clear that the WPCA attempted to assess all benefited properties at 30 percent of their enhancement value. While the plaintiff disagrees with its assessment, the WPCA assessed the subject property, based on its appraiser's report, at $1,629,000 and then determined the assessment at 30 percent of that number, or $488,700. It did the same for all other benefited properties. If the plaintiff could prove that the WPCA consciously valued other properties at a lesser rate than 30 percent of its enhancement value, it would have a claim if that increased the assessment on its own property. See Lerner Shops of Connecticut, Inc. v. Waterbury, 151 Conn. 79, CT Page 972 85, 86. That situation does not exist here. First of all, a uniform percentage of 30 percent was used for all properties. Secondly, even if some other properties in fact paid less than 30 percent, that did not result in an increase in the plaintiff's benefit assessment. The plaintiff has no standing to challenge someone else's assessment; the question is whether the plaintiff's property is assessed at the established percentage of its fair market value. O'Brien v. Board of Tax Review, 169 Conn. 129, 135; White v. Portland,63 Conn. 18, 22. Its remedy is for reduction of its own assessment if it is excessive.
2. Equal Protection Claim
A related claim is that the assessment on the subject property violates the right to equal protection under the U.S. and Connecticut constitutions in that the WPCA's assessment formula unfairly and excessively apportions the benefits and cost of the sewer construction to undeveloped rather than developed land. The assessment of benefits by the WPCA does in fact consider the benefit to each property, whether developed or undeveloped, in setting assessments. Its procedure is authorized by section 7-249 because it allows the WPCA to consider present or permitted use for classification of benefited properties. Accordingly, the WPCA can consider the highest and best use of the property under existing zoning and other municipal regulations, whether or not the property is devoted to that use, and whether or not it is vacant or improved property. An equal protection claim based on unequal application of the law must be established by competent evidence, and there must be evidence of purposeful discrimination. Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314,321. There is an inadequate legal and factual basis for such a claim here. Since benefit assessments are based on enhancement in value of each property, it makes no different whether properties are improved or unimproved at the time. In addition, an administrative appeal should not be decided on a constitutional basis when relief can be given on a nonconstitutional ground. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 720; Maloney v. Pac, 183 Conn. 313,324.
3. Delegation of Assessment Function
The next claim is that the WPCA improperly delegated its assessment function to the real estate appraisal firm and failed to critically examine the firm's reports and recommendations. An administrative agency composed of laymen is entitled to professional technical assistance in carrying CT Page 973 out its responsibilities. McCrann v. Town Plan and Zoning Commission, 161 Conn. 65, 77; Kyser v. Zoning Board of Appeals, 155 Conn. 236, 251. The members of the WPCA had neither the time or the experience to appraise all of the properties on the sewer line, and properly relied upon a qualified real estate appraisal firm to do the appraisals. All of the agency members had copies of the detailed report. The agency chairman testified that he reviewed the reports in general before voting on the final assessments for all properties. The plaintiff has not proven by a preponderance of the evidence that the agency members delegated the decision making function to the appraisal firm and let it decide what the final assessments would be on the properties benefited by the sewer line. Delegation of the duty to do appraisals of the property to the appraisal firm does not amount to delegation of authority to it to decide the final assessments where, as here, the WPCA retained the right to change assessments, and apparently did so on some properties as a result of comments at the public hearing. The WPCA retained and carried out its duty to vote on the final assessments, even though benefits may have been determined by the appraisal firm acting as its agent. This did not amount to illegal delegation of the agency's authority. See Pepe v. New Britain, 203 Conn. 281, 291.
4. Assessment of Developed and Undeveloped Properties
There is no merit to the plaintiff's claim that the defendant unfairly assessed undeveloped properties at too high a rate and developed properties, particularly those along the Boston Post Road, at too low a rate. The plaintiff makes a related claim that improperly low assessments tend to shift a greater cost and expense upon properties such as the plaintiff's. The plaintiff only has standing to challenge whether its property has received too high an assessment, and not whether someone else's assessment is too low. As a result of the way in which benefit assessments are made, the reduction in some assessments would not automatically shift the cost of the sewer onto other properties. The WPCA can only make benefit assessments against each property based upon the benefit conferred upon that property by the sewer. Cyr v. Coventry, supra, 442. As previously discussed, whether or not properties are improved is not controlling on assessments since the agency can consider the permitted use or classification of benefited properties under section 7-249. An appeal under the statute only gives a property owner the right to challenge his own assessment, not to require the WPCA to reconsider the basis for assessments, including whether property is improved or undeveloped. Even if the WPCA makes a supplementary assessment under section 7-251, CT Page 974 the supplementary assessment and the original assessment together cannot exceed the value of the special benefit to the subject property. Section 7-251 C.G.S. This concept protects the rights of each property owner.
5. Requirement for Approval Under Section 8-24 C.G.S.
Northeast also claims that the defendant violated section 8-24 of the General Statutes by not submitting or referring its proposal to locate or extend the sewer lines to the Planning and Zoning Commission for a report prior to constructing the sewerage system. The plaintiff is correct that a proposal by the WPCA for construction of a sewerage system is a municipal improvement under section 8-24, requiring a referral to the planning commission for a report.
If a proposed municipal improvement is disapproved by the planning commission, the project can still go forward if it is approved by a majority vote of those present and voting at an annual or special town meeting. Section 8-24 C.G.S. However, if the matter is not referred to the planning commission, the town meeting cannot approve the project. Jeschor v. Guilford, 143 Conn. 152, 158 (proposal for acquisition of land and location of municipal dump). In 1985 section 8-24 was amended to allow the municipality to approve a municipal improvement prior to the approval of the project by the planning commission.
Public officials such as members of an administrative agency are presumed to have performed their duties legally and properly until the contrary appears. Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 537; Leib v. Board of Examiners for Nursing, 177 Conn. 78, 84. In May 1977 the Planning and Zoning Commission approved the preliminary plan for the sewer and stated that it met its general plans for the area. The Commission's chairman also remembers some later approvals of pumping stations. Plaintiff's counsel represented that he was unable to locate any written request by the WPCA to the Planning Zoning Commission requesting approval for construction of the sewer line in the mid 1980s. Statements by counsel are not evidence and cannot be considered. Even if those remarks were considered, the plaintiff has not proven by a fair preponderance of the evidence that no referral was ever made. The approval by the Town Meeting for construction of the sewer line occurred on October 23, 1985. The sewer line was constructed and was completed in 1988, prior to the sewer benefit assessments. CT Page 975
The project went forward without objection, which provides some evidence that the WPCA obtained all necessary approvals before installing the sewer line. The fact that there is no written request from the WPCA to the Planning Zoning Commission for a report in the 1980s is not conclusive. Section 8-24 does not require a written request to the Commission from the WCPA. The statute also does not require the report by the Commission to be in writing, and an oral report to town officials would comply with the statute. The plaintiff has not proven by a preponderance of the evidence that the Commission never made a report on the construction of the sewer line.
The approval by the Commission in 1977 also arguably complies with section 8-24 which only requires "the proposal" to "locate or extend public utilities and terminals for . . . sewerage" to be referred to the Commission. Depending on what was submitted, which the plaintiff failed to prove, preliminary plans may be adequate. There is no requirement that each minor change in plans requires a new submission.
Finally, section 8-24 does not apply to the issues in this appeal. The cases in which a municipal improvement has been set aside for failure to comply with section 8-24
involved, not surprisingly, municipal improvements. Leoni v. Water Pollution Control Authority, 21 Conn. App. 77 was a declaratory judgment action to invalidate the taking of the plaintiff's property for an easement without referring the condemnation proposal to the planning commission under section 8-24. The Leoni case involved a proposal to install sewer lines. Acquisition of land and construction of a sewerage system is an action taken by a water pollution control authority under section 7-247 of the General Statutes, and it is clearly one of the types of actions that must be referred to the planning commission under section 8-24. The action appealed from by the plaintiff in this case is the assessment of benefits on an existing sewer under section 7-249. It is not a proposal to locate or extend a sewer line or construct the sewer, which is the type of action requiring approval of the planning commission under section 8-24.
6. Proper Sewer Assessment Benefit for the Subject Property
This leaves the main question which the plaintiff is allowed to raise in an appeal under section 7-250, namely whether the benefit assessment made by the WPCA exceeds the special benefit to Northeast's property and whether all relevant facts concerning the subject property were CT Page 976 considered. In an appeal from the assessment of sewer benefits under section 7-249, there is a rebuttable presumption that the assessment is valid. Cyr v. Coventry, supra, 442; Tower Business Park No. 1 Ltd. Partnership v. Water Pollution Control Authority, supra, 117; Bridge Street Associates v. Water Pollution Control Authority, supra, 144. The property owner can overcome the presumption by introducing competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement. Tower Business Park No. 1 Ltd. Partnership v. Water Pollution Control Authority, supra, 117. Northeast and the WPCA each produced an experienced appraiser with a comprehensive appraisal report on the subject property. The plaintiff's appraiser, Norman Benedict, used both the cost approach and the sales comparison approach to valuation and rendered an opinion, both in court and in his appraisal report, that the value of the subject property before sewers was $3,000,000, and the value after installation of sewers was $3,180,000. He concluded that the net benefit to the subject property was $180,000 and that the assessment at the 30% rate should have been $54,000.
The WPCA used the same appraiser as it had previously employed to do sewer assessments on all benefited properties, Brown, Chudleigh, Schuler and Associates. Mark DiMarco of that firm prepared a detailed report on the subject property and testified in court that the proper assessment method was the sales comparison approach. He concluded that the value of the subject property before sewers was $1,362,000 and that the value with sewers was $3,000,000. (Exhibit 1). This was a $9,000 increase over the actual sewer assessment, which found an enhancement of $1,629,000. DiMarco concluded that the highest and best use of the subject property was as an office or light industrial/distribution development with the installation of sewers, and that the property would have a higher value as an industrial site without sewers due to the greater septic system requirements for office development. Exhibit 1, page 14. Sewers would eliminate the problem of locating septic systems on the subject property, allowing a much larger office/high tech type of development than could be placed on the property without sewers.
His opinion was that industrial use was the highest and best use without sewers, and office use was the highest and best use with sewers.
Benedict concluded that light industrial and warehouse use was the highest and best use of the property both with and without sewers. Exhibit I, page 33. He disagreed that office buildings were the highest and best use for the CT Page 977 property since there has been a limited demand for office space in the area during the last five years, and an investor would not construct offices with a limited demand for it in the current market, unless the office space was used solely for the buyer's own use. Benedict concluded that the existing freight terminal use on the property had value and that it should be retained, and the remainder of the property developed for light industrial and warehouse uses rather than offices. He considered the site undesirable for office buildings since they would not be easily visible from I-95.
DiMarco's opinion was that the existing terminal on the property was not a valuable use since it detracted from redevelopment of the site and that the value of the property was in the land itself. The size and shape of buildings allowed with sewers under existing zoning allowed more extensive use of the property. Since the land was located a short distance from the turnpike and had access to it at the Marsh Hill Road intersection, he considered it desirable for office park development.
There are three accepted methods of valuation which may be used for the assessment of real property: (1) the comparable sales approach; (2) the income approach; and (3) the reproduction cost less depreciation or cost approach. Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385,386; Whitney Center, Inc. v. Hamden, 4 Conn. App. 426, 427-28; Pepe, Trustee v. Board of Tax Review, 14 Conn. App. 705,707. When market sales data is unavailable, which is often the case with nonresidential property, one of the other methods is used. Whitney Center, Inc. v. Hamden, supra, 428; Uniroyal, Inc. v. Board of Tax Review, supra, 386. The reproduction cost approach is used where there is no readily available market for the subject property. New Haven Water Co. v. Board of Tax Review, 166 Conn. 232, 236; Pepe, Trustee v. Board of Tax Review, 41 Conn. Sup. 457, 467, affirmed217 Conn. 240. Market sales are usually considered the best approach to valuation. O'Brien v. Board of Tax Review, supra, 138. In the absence of market sales, one of the other methods must be used. Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 674.
While sales of industrial and commercial property are not as common as residential sales, both appraisers' reports document a significant number of land sales within three or four years of the March 1989 assessment date. Fair market value is usually determined by reference to comparable sales. Uniroyal, Inc. v. Board of Tax Review, supra, 385, 386; New Haven Water Co. v. Board of Tax Review, supra, 236. When using this approach, allowance is made for dissimilarities CT Page 978 between the claimed comparable sales. O'Brien v. Board of Tax Review, supra, 135; Gorin's Inc. v. Board of Tax Review,178 Conn. 606, 609.
On appeal, the trier can determine whether the method used for valuation appears to accomplish a just result. National Folding Box Co. v. City of New Haven, 146 Conn. 578,588. The trial court can accept or reject the testimony of expert witnesses offered by one party or the other in whole or in part. Midway Green Corporation v. Board of Tax Review,8 Conn. App. 440, 443; National Folding Box Co. v. City of New Haven, supra, 586; Stamford Apartments Co. v. Stamford,203 Conn. 586, 594. The court can accept and reject portions of each appraisers' testimony and arrive at a compromised figure as most accurately affecting fair market value. Eichman v. J J Building Co., 216 Conn. 443, 450, 451; Whitney Center, Inc. v. Hamden, supra, 430. In arriving at the highest and best use of the property, the court can consider the testimony of the appraisers, claims of the parties, his own general knowledge of the elements of value, and the information obtained from viewing the property. Stamford Apartments Co. v. Stamford, supra, 592; Midway Green Corporation v. Board of Tax Review, 8 Conn. App. 440, 442,443; Tucker v. Hartford, 15 Conn. App. 513, 517; O'Brien v. Board of Tax Review, supra, 136. In this case the Court did not view the subject property, but photographs of it and the surrounding area were produced at the trial.
There is no substantial disagreement between the appraisers as to the value of the subject property after installation of the sewers. The Court finds that the value of Northeast's 17 acre parcel after installation of sewers was $3,000,000 as of the assessment date, March 1989. The Court also finds that there was sufficient data to value the subject property using the market sales approach. As of March 1989 the property had value for office buildings, warehouses and for what the parties designated "flex space", namely a combination of industrial and office uses. The subject property also had value as a freight and materials trucking business, but that is a nonconforming use under the zoning regulations and required the remainder of the property to be used for permitted uses. Generally, the highest and best use for the subject property would be for offices buildings, but market conditions reduced the value of the property somewhat for that use. Appraisal of property, however, is required to make some allowances for temporary changes in market conditions. See Voluntown v. Rytman,21 Conn. App. 275, 284 and cases cited therein. On the assessment date there was no material difference, as highest and best use of the property, for office, light industrial CT Page 979 and warehouse uses, due to some loss of demand for office use. However, valuation of property must be considered on a more long term basis, and some buyers will acquire property for future use or for its anticipated future increase in value.
As with tax appeals, the Court can select the method of valuation which is most appropriate in a sewer benefit assessment case, which is often the market sales approach. Bridge Street Associates v. Water Pollution Control Authority, supra, 145, 147. In deciding to what extent the sewer confers an additional benefit upon the property the existing private septic system has also been considered, O'Rourke v. Stamford, 179 Conn. 342, 348, although the Court does not assign as much value to it as the plaintiff's appraiser. Both appraisers have comparable sales data in their reports, although some of the comparables in each report are rejected. The sales for truck terminal type buildings on pages 48 through 57 of Exhibit I are rejected because the subject property has better uses and the suggested comparables are in Wallingford and Berlin.
The best indication of value is land sales between 1985 and 1989 in Orange. See Exhibit 1, page 15; Exhibit I, pages 36-39. The most reliable sales are properties without sewers used for office or industrial development, such as parcels O-1, O-4, I-1, I-2, I-3, I-4 and I-5 on page 15 of the DiMarco appraisal. The Benedict appraisal, covering more comparables from the New Haven County area, concluded that appreciation of property between 1984 and 1989 was about 10% per year. Applying that factor to the parcels in Orange which were sold without sewers (see Exhibit 1, page 15) and averaging them out, results in a value of $110,000 to $111,000 per acre. On that basis, the value of 17 acres of office or industrial land before sewers as of March 1989 would be $1,880,000. The existing buildings do not increase the value of the property. The DiMarco appraisal concluded that the highest and best use before sewers was light industrial development, and valued the property at $80,000 per acre. That appraisal failed to take into account the increase in value from the date of sale of the comparables used in that report. On the other hand, the pre-sewer valuation of $140,000 per acre in the Benedict report is too high. Some of the comparables used in it were for small parcels of land where the price per acre tends to be higher than with larger parcels. The subject property contains 17 acres. If the list of comparables is narrowed to parcels in the 10 acre to 20 acre range, the cost per acre before sewers is much lower. Using sales 7 through 11 on page 39 of Exhibit I, adding a 10% adjustment rate to March 1989, yields an average value per
CT Page 980
acre of $117,661, considerably less than the $140,000 per acre valuation reached in the report.
While the Benedict appraisal also used the replacement cost less depreciation approach, it is rejected by the Court in this case. This approach is used where there is no readily available market for the subject property and more particularly for special use property. Pepe v. Board of Tax Review, supra, 41 Conn. Sup. 457, 467, affirmed 217 Conn. 240; New Haven Water Co. v. Board of Tax Review, supra, 236. The area around the subject property has uses which are compatible with it, and the comparable sales show that there is a market. In addition, replacement cost less depreciation is applied as an acceptable measure of value when it can be concluded that if the property in question is destroyed an owner would rationally replace it. Id. 239; Pepe v. Board of Tax Review, supra, at 266, 267. The trucking terminal is an old building and it is questionable whether it would be replaced if it were destroyed. There would also be problems in doing so since it is a nonconforming use.
While the property tax assessment is not controlling as to value, it provides some confirmation of it. There is a difference of opinion between the two appraisals as to whether the last assessment occurred in 1980 or 1981. See Exhibit 1, page 7 and Exhibit I, page 28. The property was assessed at $688,880, representing 70% of its value as of the assessment date. One hundred percent valuation would be $984,100. An increase in value at 10% per year from the last revaluation date would result in a value of about $1,800,000 in 1989.
The Court accepts the comparable sales approach and finds the value of the 17 acres of the subject property to be $1,880,000 (about $110,500 per acre) as of March 1989. If this amount is subtracted from the value after installation of the sewers, namely $3,000,000, the benefit to the subject property from the sewers is $1,120,000. The assessment, at 30% of that number, should have been $336,000, not $488,700.
The appeal is sustained, and the benefit assessment on the subject property is reduced to $336,000.
ROBERT A. FULLER, JUDGE