## NELSON CECARELLI ET AL. *v.* BOARD OF ASSESSMENT APPEALS OF THE TOWN OF NORTH BRANFORD*

Superior Court, Judicial District of New Haven

File No. CV-02-0464729-S

Memorandum filed September 30, 2003

*Robert M. Singer*, for the plaintiffs.

*Gesmonde, Pietrosimone & Sgrignari, LLC*, for the defendant.

BLUE, J. The issue in this municipal tax appeal is the appropriate valuation of a farmhouse and its curtilage. The difficulty in valuing the subject premises arises from the fact that the development rights to the entire farm (including the residential portion) have been deeded to the state, resulting in significant restrictions on alienability. For the reasons the court will state, the appeal must be sustained.

The subject premises (property) are located at 186 Old Post Road in North Branford. The area of the property is approximately fifty-three acres. The property is one of two parcels forming a larger farm, and (to make matters slightly more confusing) that larger farm is itself half of a two farm complex owned by the appellants,

---

* Affirmed. *Cecarelli* v. *Board of Assessment Appeals*, 272 Conn. 485, 863 A.2d 677 (2005).

Nelson Cecarelli and other members of his family. (The appellants will be referred to collectively as Cecarelli.) The entire two farm complex occupies approximately 130 acres. In 1997, Cecarelli conveyed the development rights to both farms to the state by deed (deed) pursuant to General Statutes § 22-26cc (a). The deed provides that "[t]he fee simple owner of the [premises] shall not divide, subdivide, develop, construct on, sell, lease or otherwise improve the [p]remises for uses that result in rendering the [p]remises no longer agricultural land." It further provides that "[n]o use shall be made of the [p]remises . . . which is or may be inconsistent with the perpetual protection and preservation of the land as agricultural land." Finally, the single-family residence on the premises (either the existing residence or any new residence built in its place) may be used only by "persons directly incidental to the farm operation."

The town of North Branford (town) revalued its properties as of October 1, 2001. The town hired a private company to do what the town assessor called a "mass appraisal" of approximately 5400 properties in the town. Following adjustments by the board of assessment appeals, the property was appraised as follows:

| | |
|---|---|
| Residential Land | $78,400 |
| Dwelling | $105,000 |
| Residential Outbuildings | $29,100 |
| Farmland | $300,000 |
| Total | $512,500 |

Cecarelli disputes the valuation of the "residential land" and the dwelling. He does not dispute the valuation of the residential outbuildings and the farmland. On May 15, 2002, he commenced a timely appeal by service of process pursuant to General Statutes § 12-117a. The

appeal was tried to the court on August 20, 2003. Following posttrial briefing, the appeal was argued on September 29, 2003.

The trial was curiously one-sided. Cecarelli presented both his own descriptive testimony and the expert appraisal testimony of George T. Malia, Jr., an experienced appraiser of agricultural property. Malia presented testimony, to be discussed in a moment, concerning both the farmhouse and its curtilage. The town, in contrast, did not present the testimony of anyone familiar with the property. (No agent or employee of the private company responsible for the town's appraisal was called.) It presented the testimony of a deputy bureau director of the department of agriculture and the town assessor, neither of whom displayed any cognizable acquaintance with the property. Thus, the trial here did not follow the path of the usual municipal tax appeal with contending experts. For practical purposes, the town seems to have not considered the valuation of the dwelling worth contesting. As to the valuation of the "residential land," the town, as I understand it, argues that *as a matter of law* a residential lot sized portion of the land immediately surrounding the dwelling should be given the same value as other residential lots in the immediate area *even though those other residential lots are not subject to the same restrictions on use and alienation as the residential lot here.* To state this proposition is to refute it.

The town has effectively (although not formally) thrown in the towel as to the dwelling. The evidence establishes that the dwelling was built in 1705 and is in poor physical condition. The deed restricts use of the dwelling to "persons directly incidental to the farm operation." The dwelling has recently been used for the housing of farmhands. Malia's credible and unrebutted evidence establishes that the dwelling has a value of

$96,000. (Malia's valuation is as of February 1, 2002, while the valuation date in question is October 1, 2001. There is, however, no evidence of any significant price fluctuation in the intervening three months.)

The valuation of the "residential land" requires more detailed discussion. The town admits that the "residential land" area it has chosen to appraise as such is an artificial construct. The town's field card describes this area as consisting of ".92" acres, but the town assessor explained that this area was selected not because of the natural features of the subject property but because this is the size of the typical residential lot in the immediate area. As it happens, however, there is an unplanted curtilage of approximately one acre surrounding the dwelling, so this difference seems, at first blush, de minimus. (Some problems with the town's artificial approach will be discussed in a moment.) The more serious issue is how the "residential land" ought to be valued.

The town, as mentioned, has valued the "residential land" at $78,400. This valuation appears to be consistent with the value of residential lots of similar size in the area. The residential lots with which the town compares the subject premises are, however, unencumbered fees. The subject premises, in contrast, are significantly encumbered by the restrictions in the deed. Malia testified that, using the comparable sales approach for similarly encumbered properties, the value of Cecarelli's actual curtilage is $14,325. This testimony is, for all practical purposes, unrebutted. After carefully considering all of the evidence, the court accepts Malia's testimony on this point as credible. Although, as mentioned, the "residential land" appraised by the town occupies a slightly smaller area than the curtilage appraised by Malia, the difference is de minimus here. After considering all of the evidence, the market value of the "residential land" is found to be $14,325.

The parties have focused their attention on General Statutes § 12-107c (a), which provides for the classification of certain agricultural land as farmland. The "farmland" here has been so taxed, but the valuation of that land is not an issue in the case. In *Newton* v. *Board of Tax Review*, Superior Court, judicial district of New Haven, Docket No. CV-94-0359326S (November 21, 2001) (30 Conn. L. Rptr. 746), *Booth, J.*, held that, under § 12-107c (a), "the minimum acreage required by zoning for a residence" surrounding a farm dwelling "should be assessed at market value." Id., 747. If Judge Booth is correct, the question would then become, what is the "market value" of "the minimum acreage required by zoning for a residence" here?

With respect, I believe that Judge Booth's focus on "the minimum acreage required by zoning for a residence"; id.; rather than on the actual unplanted curtilage on the property in question is not justified by the statute and could lead to unjust results in some cases. The problem lies in the analytical use of an artificial construct rather than the actual facts on the ground. Where, as here, a residence is surrounded by an unplanted area close in size to the minimum acreage required by zoning for a residence, no great injustice will result from use of the market value of the minimum acreage. Use of this artificial construct will be literally close enough for government work. But as the facts on the ground begin to differ more significantly from the artificial construct, serious injustices can develop in either direction. If a particular dwelling is surrounded by several acres of unplanted land (think of the manorial Texas ranch house in the 1950s movie "Giant"), the property owner would gain an unjustified windfall from the use of a "minimum acreage" model. On the other hand, a property owner who plants crops right up to the footprint of his residence (think of Dorothy's house landing in a cornfield) will be severely overtaxed by use of the same

model. Neither logic nor statutory text dictates use of the cookie-cutter "minimum acreage" approach.

The town nevertheless argues that the "market value" of the "residential area" should be that of a standard residential lot in the immediate area and, inspired to even greater fictional heights, argues that the "market value" must be determined without regard to the actual encumbrances placed on the property by the deed. It reasons that, since the definition of "farm" contained in General Statutes § 1-1 (q) "does not include 'residence' or 'residential lot' . . . assessors have created the 'fiction' of a residential lot beneath a dwelling on farmland because only 'farmland' pursuant to [§ 12-107c (a)] is to receive preferential tax treatment." This argument turns the statute on its head.

The reason that the definition of "farm" in § 1-1 (q) does not include "residence" or "residential lot" is that the statutory definition "refers to land that has been altered or developed from its natural state in order to enhance or promote its use for farming." *Metropolitan District* v. *Barkhamsted*, 199 Conn. 294, 302, 507 A.2d 92 (1986). An unplanted residential lot has not been altered from its natural state in order to enhance or promote its use for farming. If such an area exists, as it does here, it should not be taxed as "farmland." It should, however, be taxed based on its actual market value rather than on the market value of some different, purely hypothetical parcel of land. Nothing in § 12-107c (a) (or, for that matter, in *Newton*) requires the completely hypothetical market value that the town advocates here.

The ineluctable fact that a property subject to encumbrances has a market value less than an otherwise similar property not subject to encumbrances has nothing to do with agricultural policy and everything to do with the laws of economics. It is well established that

"[w]hen an easement is carved out of one property for the benefit of another the market value of the servient estate is thereby lessened . . . ." (Internal quotation marks omitted.) *Pepe* v. *Board of Tax Review*, 41 Conn. Sup. 457, 464, 585 A.2d 712 (1990), aff'd, 217 Conn. 240, 584 A.2d 1188 (1991). The restrictions on use and alienation here have a similar effect. If Smith and Jones own identical residential lots, but Smith's lot can be sold only to lefthanded redheads while Jones' lot can be sold to anybody, it does not take an expert in economics to correctly conclude that Jones' lot will be the more valuable of the two. If Smith and Jones own identical commercial properties, but Smith's property can be used only to sell buggy whips while Jones' property can be used to sell anything, once again Jones' property will be the more valuable of the two. By the same process of market economics, if Smith and Jones own otherwise identical residential properties, but Smith's property can only be used by persons directly connected with the operations of a farm while Jones' property can be used by anyone, it stands to reason that Jones' property will be the more valuable of the two. In a state like Connecticut, not overpopulated by farmers, this differential is likely to be substantial. That difference is substantial here, and the court is fully convinced by the evidence that the town's assessment of Cecarelli's "residential area" is grossly excessive.

After considering all of the evidence, the court finds that the value of the "residential land" as of October 1, 2001, is $14,325. The value of the dwelling is $96,000. The total fair market value of the property on the valuation date was therefore $439,425.

The appeal is sustained.